JOSEPH CALOMINO, Plaintiff-Appellant, v. BOARD OF FIRE AND PO-LICE COMMISSIONERS OF THE VILLAGE OF SCHAUMBURG *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—93—2085

Opinion filed June 21, 1995.

Wayne M. Klocke, of Countryside, for appellant.

Jack M. Siegel, of Altheimer & Gray, of Chicago, for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Joseph Calomino, was employed as a patrol officer for the Village of Schaumburg, Illinois. After a hearing, the Board of Fire and Police Commissioners of Schaumburg (Board) found that plaintiff violated various rules and ordered that he be discharged. The trial court affirmed the order and later denied a motion to reconsider. Plaintiff appeals that final judgment. We affirm.

The issues for review by this court are (1) whether police department rules establish a clear standard of conduct; (2) whether plaintiff's actions constitute cause for discharge; (3) whether the Board afforded plaintiff a full and fair hearing; and (4) whether pros-

ecuting plaintiff on the charge that he "failed to competently perform his duties over the last six years" violated the principle of equitable estoppel, due process, or the doctrine of *laches*.

On July 11, 1990, the Melanowski family was vacationing in Wisconsin. The Rays, who live next door, were watching over the Melanowski residence. Around 10 p.m., Julie Ray, a 24-year-old college student, heard some loud banging. Ray and her mother went outside but did not notice anything unusual. On July 12, 1990, Ray and her mother went to the Melanowski residence to pick up the mail. When they tried to use the key, the lock would not turn; they also noticed footprints on the front door. They went to the back of the residence and found the back door frame shattered, the deadbolt on the floor, and broken glass from the window next to the door. There was a key in the back door, a broken key on the floor, and keys on the counter. Ray's mother called the police and plaintiff was dispatched to take the burglary report.

Upon arrival, plaintiff parked his squad car in front of the Melanowski residence and had a brief conversation with Ray. Ray told him how she had found the door open and her parents were in the house cleaning things up. She also told plaintiff that the owners would be home within two hours. Plaintiff told Ray to have her parents leave the house and not to touch anything else. Ray then agreed to secure the premises and said she would tell the homeowners to contact the police when they arrived.

Plaintiff had the impression there was no forced entry because Ray told him there were keys on the countertop and a key in the door. Plaintiff did not exit his squad car at any time while answering the burglary call. Since plaintiff did not exit his squad car, he did not see the footprints on the front door or all the damage done to the back door. He concluded, however, that there was a burglary. Plaintiff also concluded that the offenders were no longer at the scene and the neighbors had tampered with the evidence. Plaintiff cleared from the call reporting that the call was "cold" and there was "No victim," indicating that the intruder was gone and the homeowners were not at the scene. He did not fill out a written incident report.

The homeowners called the police when they arrived, and Officer Liberio was sent to the Melanowski residence. He exited the squad car and inspected the residence. He went to the back door and saw that the door was damaged, he saw a broken window, a damaged screen door, and a bent metal decoration. Officer Liberio then took a statement from the Rays and the Melanowskis, who pointed out footprints, a soda can left by the intruder, and a rock believed to be

the one used to smash the window. The officer went into the residence to make sure there was nobody inside, then he requested an evidence technician unit. The technicians processed the crime scene, taking prints, dusting, and photographing. Officer Liberio also did a neighborhood canvass, going door to door, attempting to locate possible witnesses. At the end of his investigation, Officer Liberio filled out a burglary field case report.

The chief of police, Kenneth Alley, charged plaintiff with violating rules and regulations of the Schaumburg police department. The charges alleged plaintiff failed to fulfill his responsibilities at the scene of a reported criminal incident; failed to properly investigate a complaint; failed to complete a preliminary investigation of a reported criminal incident scene; failed to comply with orders of the department operating procedure; failed to notify the communications center of his proper arrival time at the scene; failed to produce a written incident report of a criminal incident; engaged in conduct which adversely affected the morale and efficiency of the department; and failed to perform his duties in a competent and acceptable manner in the past six years.

After the hearing, the Board found that plaintiff, a 10-year veteran, "blatantly ignored the Standard Operating Procedures of the Schaumburg Police Department" and held that the July 12, 1990, incident constituted sufficient cause for discharge. Specifically the Board found that on July 12, 1990, plaintiff violated the following Schaumburg police department rules:

> "a) Standard Operating Procedure—P. 36 re: Conduct, Preliminary Investigations
>
> b) §1.5.2.35—Neglect of Duty
>
> c) §1.4.9.2(4)—Duties of Patrol Officer, Preliminary Investigation
>
> d) §1.5.2.36—Requiring Prompt Performance of Duties
>
> e) §1.5.2.54—General Responsibilities at Crime Scene
>
> f) §1.5.2.23—Duty to Read/Understand/Comply with Orders
>
> g) §1.5.2.34—On-Duty Conduct Affecting the Efficiency, Image and Public Confidence in the Department."

After looking at plaintiff's record, the Board also found plaintiff failed to perform his duties in a competent and acceptable manner over the last six years and that such conduct violated department rules and regulations warranting his termination.

■ Plaintiff first contends that the rules he was charged with violating do not begin to approach the "rough idea of fairness" required by *Bence v. Breier* (7th Cir. 1974), 501 F.2d 1185, 1190. In *Bence*, the seventh circuit held that "conduct unbecoming an officer

and detrimental to the service" did not create a rule capable of objective interpretation. (501 F.2d at 1190.) In the present case, plaintiff was charged with violating General Order 79—26, which deals with preliminary investigations. The rule states that "investigation usually includes" and then lists 12 steps to follow when conducting a preliminary investigation. Plaintiff contends that the language in the order allows for patrol officer discretion or else is unconstitutionally vague. Plaintiff also contends that section 1.5.2.35, neglect of duty, uses undefined words such as "suitable attention" and "appropriate actions."

Although plaintiff contends that General Order 79—26 allows for officer discretion, he admits that nowhere in the order is the word "discretion" used. The Board held that "while every action mentioned [in General Order 79—26 P. 36] may not be applicable to every incident investigated, it was not within the discretion of [plaintiff] to not perform virtually all of the procedures set forth in the General Order." Among the preliminary investigation steps listed in the order are: (1) providing aid to the injured, and (2) effecting an arrest at the scene or through immediate pursuit. Those two steps were not applicable to the burglary call of July 12, 1990. It is understandable that plaintiff could not have aided the injured during the burglary call because nobody was injured. It was also impossible for plaintiff to effect an arrest at the scene because the offense had been committed many hours before the police were called. The other items listed in the order, however, were applicable to the burglary call of July 12, 1990. Plaintiff could have easily accomplished the other 10 steps listed in the preliminary investigation order. Therefore, in the present case, "the investigation usually includes" did not include the two steps that require aid to the injured and effecting an arrest at the scene. Plaintiff's preliminary investigation should have included the 10 applicable steps though.

Furthermore, plaintiff was charged with violating other department rules and regulations. In particular, section 1.5.2.23 states:

> *"Duty to Read/ Understand/ Comply with Orders*
>
> Failure to read, understand or comply with all rules and regulations, general and special orders, policies and procedures of the Department, written or verbal orders of a superior. To this end, it shall be considered to be Neglect of Duty to fail to inquire of a superior until the matter is resolved any question as to the meaning or application of any law, rules or regulation, general or special order, policy or procedure, written or verbal order."

Even if plaintiff, a 10-year veteran, did not understand the rules and orders, he should have asked, per section 1.5.2.23, a superior what

the rules meant. In that event, a superior could have told plaintiff that there was no patrol officer discretion involved in General Order 79—26 P. 36. Moreover, plaintiff does not specify how the other rules and regulations he was charged with are unconstitutionally vague. After reviewing the record, we do not find that General Order 79—26 P. 36 allows for patrol officer discretion nor do we find that the rules and regulations plaintiff was charged with violating were unconstitutionally vague.

Plaintiff next contends that the evidence fails to establish that his actions on July 12, 1990, violated any departmental rules or otherwise constitute cause for discharge. The review of an administrative agency's decision to discharge an employee is a two-step process. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105, 449 N.E.2d 115, 117.) First, we must determine whether the administrative agency's findings of guilt are clearly against the manifest weight of the evidence. (*Walsh*, 96 Ill. 2d at 105, 449 N.E.2d at 117.) Second, we must determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge exists. (*Walsh*, 96 Ill. 2d at 105, 449 N.E.2d at 117.) The question, however, is not whether this court would decide upon a more lenient sanction, but whether the Board acted unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of the department. *Sutton v. Civil Service Comm'n* (1982), 91 Ill. 2d 404, 411, 438 N.E.2d 147, 150.

■ A single violation of department rules would authorize dismissal. (*McHenry v. City of East St. Louis* (1991), 210 Ill. App. 3d 861, 869, 569 N.E.2d 259, 264; *Klee v. Board of Fire & Police Commissioners* (1991), 214 Ill. App. 3d 1099, 1102, 574 N.E.2d 241, 243.) There is no dispute that a burglary occurred at the Melanowski residence and plaintiff was dispatched to investigate. The record shows that plaintiff did not even get out of the squad car to conduct his preliminary investigation. Plaintiff did not obtain identification of all the witnesses, canvass the residents in the vicinity, arrange for collection of evidence and photography of the scene, or write out a report. Instead, Officer Liberio had to conduct the entire investigation after plaintiff cleared from the call.

Furthermore, the record shows that plaintiff violated several rules over the last six years which led to an average 8.25 days of suspension a year. Plaintiff had been repeatedly warned that his performance needed improvement. The Board could properly consider plaintiff's past performance in determining cause for discharge.

The Board's findings of guilt are not clearly against the manifest weight of the evidence and its determination that plaintiff's actions

constituted cause for discharge is neither arbitrary nor unreasonable. It is apparent that a police officer who does not abide by the rules of the department will impair the discipline and efficiency of the police force. Plaintiff's conduct on July 12, 1990, and over the last six years can be categorized as a substantial shortcoming which renders his continuance as a police officer detrimental to the discipline and efficiency of the service. See *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360, 189 N.E.2d 275, 277.

■ Plaintiff next contends that the Board denied him a full and fair hearing. Plaintiff alleges that the Board improperly excluded and ignored evidence regarding custom and practice of other officers in the Schaumburg police department when responding to suspected residential burglary calls. Plaintiff states that "custom and practice is a legitimate area of inquiry under the statutory 'cause' standard. Cases of this type involving allegations that an officer has failed to perform required duties can never be judged in a vacuum. Rather, the trier of fact must consider what is practiced by, expected of, and tolerated of other officers who perform similar duties in the department." As to this argument, however, no case law or authority is cited.

The record shows that plaintiff was allowed to present evidence as to custom and usage. What the Board did not allow was evidence of specific instances where other officers used their discretion when responding to a burglary call. Cause for discharge can be found regardless of whether other employees have been disciplined differently. (*Launius v. Board of Fire & Police Commissioners* (1992), 151 Ill. 2d 419, 442, 603 N.E.2d 477, 487.) Furthermore, there was no evidence of prior problems with the other officers. For the reasons stated, we find that plaintiff had a full and fair hearing.

Plaintiff next contends that he should not have been charged with failing to perform competently over the last six years because it violates the principle of equitable estoppel, the doctrine of *laches* and plaintiff's right of due process. Principles of *laches* are generally applied when a party's failure to assert a right caused prejudice to the opposing party. (*Van Milligan v. Board of Fire & Police Commissioners* (1994), 158 Ill. 2d 85, 89, 630 N.E.2d 830, 833.) There is considerable reluctance to impose the doctrine of *laches* against a governmental body's actions. (*Van Milligan*, 158 Ill. 2d at 90, 630 N.E.2d at 833.) Although this reluctance does not rise to the level of absolute immunity, *laches* does not apply to the exercise of governmental powers except under compelling circumstances. *Van Milligan*, 158 Ill. 2d at 91, 630 N.E.2d at 833.

■ The Schaumburg police department has extended itself in an ef-

fort to provide plaintiff with progressive discipline. Plaintiff had participated twice in an employee assistance program designed to assist him with personal problems and improve his job performance. He had been counseled with respect to performance deficiencies. His appraisals reveal that plaintiff ignored many aspects of job enforcement, showed lack of concern when dealing with the public, and frequently exhibited a negative attitude towards his job. Plaintiff had been given repeated warnings that his performance needed improvement.

In addition, plaintiff had been suspended for violating several rules. The record shows plaintiff was suspended for failure to complete accident reports, leaving assigned beat areas, involvement in a chargeable motor vehicle accident, sleeping/loafing on duty, failure to timely report for duty or to contact a supervisor, failing to remain in an assigned patrol/beat area and falsely reporting to dispatcher, failing to respond to assigned calls and remaining out of service for an excessive period of time, and failure to properly respond to a personal injury accident. The Board considered plaintiff's record over the last six years, which includes the July 12, 1990, incident, and found plaintiff violated section 1.5.2.67—incompetence. Furthermore, the Board properly considered plaintiff's record in determining whether to discharge him. See *Martin v. Matthys* (1986), 149 Ill. App. 3d 800, 807, 501 N.E.2d 286, 291.

Although the chief could have discharged plaintiff previously, he chose not to do so. This choice did not prejudice plaintiff. The July 12, 1990, incident was the proverbial last drop in the bucket that caused the chief to decide it was time to charge plaintiff with incompetence. We do not believe that the equitable principles of *laches* should be invoked under the facts of this case.

■ We reject the due process and equitable estoppel arguments for failure to comply with Supreme Court Rule 341(e)(7), which provides that arguments of appellants must contain their contentions and reasons therefor, with citation of authorities, and points not argued are waived. (134 Ill. 2d R. 341(e)(7).) Points raised in a party's brief that do not have the issues clearly defined with relevant authority cited and logical arguments presented may be deemed waived. (*Groenings v. City of St. Charles* (1991), 215 Ill. App. 3d 295, 305-06, 574 N.E.2d 1316, 1323.) Plaintiff's brief does not meet this standard. Therefore, plaintiff waived those issues.

For the aforementioned reasons, we affirm the judgment of the trial court.

Affirmed.

TULLY and CERDA, JJ., concur.