2021 IL App (1st) 200153-U

No. 1-20-0153

Second Division
September 21, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| | ) | Appeal from the |
| JOSEPH J. FOX and AVI Y. FOX, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 17 L 5955 |
| | ) | |
| CRAIN COMMUNICATIONS, INC., | ) | |
| LYNNE MAREK and MICHAEL ARNDT, | ) | Honorable |
| | ) | Patricia O'Brien Sheahan |
| Defendants-Appellees. | ) | Judge, presiding. |

---

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court properly granted summary judgment in favor of defendants and against plaintiff Joseph Fox on his claim of defamation *per se* and false light invasion of privacy where Joseph failed to show actual malice and the statements were substantially true. The circuit court properly granted defendants' motion to dismiss as to plaintiff Avi Fox where the statements were not "of or concerning" Avi.

¶ 2    Plaintiffs-appellants, Joseph J. Fox (Joseph) and Avi Y. Fox (Avi) filed suit against defendants-appellees, Crain Communications, Inc. (Crain), Lynne Marek, and Michael Arndt alleging defamation and false light invasion of privacy after an article was published in *Crain's Chicago Business*, a business reporting newspaper and website. Joseph appeals *pro se* from the circuit court's entry of summary judgment in favor of defendants on all his claims. Avi appeals *pro se* from the circuit court's grant of defendants' motion to dismiss his claim with prejudice pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)). For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4                          A. Joseph's Experience

¶ 5    Joseph and his brother Avi co-founded two companies, Ditto Holdings, Inc. (later known as SoVesTech, Inc.) and its wholly-owned subsidiary and broker-dealer, Ditto Trade, Inc. (collectively, Ditto). Joseph served as the chief executive officer (CEO) of Ditto, a social brokerage firm which allowed users of its proprietary technology to trade in securities markets by emulating more experienced traders.

¶ 6    In 1996, Joseph founded Web Street, a company which pioneered in creating technology that allowed investors to stream stock quotes through their computer browser and access real-time positions and balances. Joseph regularly made media appearances and utilized the business press to promote his views regarding the role of technology in the securities industry and to publicize his companies' abilities to offer social media platforms that would enable customers to gain expertise in regulated securities markets.

¶ 7    In 1998, Joseph testified as an expert before Congress regarding the rapid consumer adoption of online stock trading and related concerns pertaining to security features and protection

of investors in trading technology. Joseph became one of the first to conduct an online trade on the floor of Congress. In 2012, Joseph appeared as a brokerage expert on CNBC to opine on whether "Wall Street needed to get more humans back to trading." He has been featured on numerous shows and publications for expressing his opinions about the securities industry. For instance, in 2012, he obtained coverage for Ditto, which resulted in Ditto being featured in *Forbes*, *Fortune*, *USA Today*, *The Washington Post*, *Barron's*, Yahoo News, Reuters, and various nationally televised shows.

¶ 8                                    B. The SEC Investigation

¶ 9      In September 2013, both the Securities & Exchange Commission (SEC) and the Financial Industry Regulatory Authority (FINRA) launched investigations of Joseph and Ditto. In September 2015, the SEC issued a decision finding that Joseph "willfully violated" sections 5(a) and 5(c) of the Securities Act of 1933. The SEC ordered Joseph to cease and desist any further violations, disgorge $125,210 in profits gained because of the violation, and pay a civil penalty of $75,000 to the SEC.

¶ 10     The SEC conducted further proceedings against Joseph "to determine, what, if any, additional non-financial remedial sanctions under Section 15(b)(6) of the Securities Exchange Act of 1934" would be "in the public interest." On April 25, 2016, another public decision was issued. In the April 2016 decision, the SEC Administrative Law Judge (ALJ) found that Joseph's violation of the Securities Act was "egregious" and that "both investors and the marketplace were harmed by being deprived of information necessary to make fully informed investment decisions." As such, the ALJ barred Joseph from the financial industry for a period of five years, specifically prohibiting him from "associating with a broker, dealer, investment adviser *** or nationally recognized statistical rating organization, and from participating in an offering of penny stock."

¶ 11                    C. Federal Retaliatory Discharge Suit

¶ 12    Prior to the ALJ's 2016 decision, in January 2014, former Ditto executive Paul Simons filed a suit against Joseph and Ditto in the United States District Court for the Northern District of Illinois (Federal Suit). Simons claimed that he was fired in retaliation for informing regulators about potential misappropriation of funds and securities violations. In February 2016, the district court entered an order of default against Ditto and dismissed Ditto's counterclaims against Simons. On March 9, 2016, the final order of default was entered. After a prove-up hearing, a final judgment against Ditto and in favor of Simons in the amount of $2.7 million was entered on April 7, 2016. On September 13, 2016, Joseph contested the judgment was on the merits, which the district court rejected and confirmed that it was on the merits and was a final judgment.

¶ 13                                D. The Article

¶ 14    On June 11, 2016, Crain published the article at issue in *Crain's Chicago Business* (Article). The online version of the article bore the headline "Frustrated investors led on Fox hunt in L.A." The article addressed the retaliatory discharge lawsuit filed by Simons, an SEC investigation that led to Fox being banned from the financial industry, and frustration among Ditto investors over being kept in the dark about Ditto's troubles. The article stated that Joseph and Avi were named "Crain's 40 under 40 list in 2000." According to the article, the brothers had co-founded Web Street in 1996 which they later sold, had attempted to "take a [startup]" company public but "a 2008 'restructuring' ultimately led to a sale the following year," and "in 2010, they launched the company that would lead to the current barrage of beefs." With regards to the federal suit, the article reported that "former CEO Paul Simons, who was fired in 2013, sued the company and Joseph in 2014, alleging he was ousted in retaliation for alerting the SEC to corporate

misconduct by Fox." The article stated that " [a] federal judge in Chicago agreed with Simons, ordering Ditto in April to pay him $2.7 million."

¶ 15                                E. Amended Complaint

¶ 16     On October 19, 2017, plaintiffs filed a three-count amended complaint asserting claims of defamation (count I), false light invasion of privacy (count II) and intentional infliction of emotional distress (IIED) (count III). Plaintiffs claimed that two statements in the article defamed them and placed them in a false light: (1) the statement that a "federal judge in Chicago agreed with Simons ordering Ditto in April to pay him $2.7 million" (Judge Statement); and (2) the headline "Frustrated investors led on Fox hunt in L.A." (Digital Headline). Plaintiffs asserted that these "false statements made by [defendants] *** constitute[d] defamation *per se* (as well as defamation *per quod*) as it pertains to Joseph Fox, and defamation *per quod* as it pertains to Avi Fox."

¶ 17     Plaintiffs alleged that the Judge Statement was defamatory because the district court never agreed with Simons that Joseph had committed corporate misconduct as the judgment was merely a procedural default against Ditto. Further, plaintiffs alleged that the Digital Headline defamed Joseph because it implied that he was hiding from investors in Los Angeles even though he "had been living in California for six years." The complaint then stated that "[f]or a more detailed analysis of the falsities of the June 13, 2016 Article, See Exhibit 7."

¶ 18     Exhibit 7 is a document consisting of more than 100 paragraphs in which plaintiffs argue that the entire article itself "including the headline, imagery, and colorful timeline was a calculated effort *** to permanently destroy [their] reputation." Plaintiffs argued that "[a]s a direct and proximate result of the [defendants'] false statements, *** [they] suffered substantial and irreparable damages, and will continue to suffer damages, including but not limited to loss of

income, loss of good name, loss of reputation, loss of business, as well as embarrassment, shame, humiliation and emotional distress."

¶ 19 With regards to their false light claim, plaintiffs argued that defendants' conduct placed them in "false light before the public via *Crain's Chicago Business*, in both print and via its online website." Further, the false light would be highly offensive to a reasonable person and defendants "acted with actual malice and knowledge that the statements about [p]laintiffs *** were false and/or with reckless disregard for whether the statements were true or false."

¶ 20 Finally, with regards to their IIED claim, plaintiffs argued that defamatory statements "constitute[d] a pattern of negligent, malicious and harmful conduct, purposely continuing from time to time, causing each [p]laintiff severe emotional and psychological injury."

¶ 21 F. Motion to Dismiss

¶ 22 On November 16, 2017, defendants Crain and Arndt moved to dismiss plaintiffs' amended complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2016)).[1] Crain and Arndt pointed out that (1) Avi only asserted a defamation *per quod* claim; and (2) Joseph's defamation *per se* claim and false light claim were essentially premised on the Judge Statement and the Digital Headline. With respect to the Avi's claim, Crain and Arndt argued that the article only mentioned Avi "in passing" and the amended complaint failed to "allege any facts showing that any third parties reasonably understood that any allegedly defamatory statement in the Article was about Avi." Aside from this "fatal defect," Crain and Arndt argued that plaintiffs failed to plead special damages necessary to state a claim of defamation *per quod*. Additionally, Joseph

---

[1] On January 1, 2018, Marek joined Crain and Arndt's motion to dismiss plaintiffs' amended complaint.

failed to meet his burden of pleading defamation *per se*, plaintiffs failed to state a claim for false light, and plaintiffs failed to plead an IIED claim.

¶ 23    In response, plaintiffs argued that the article constituted defamation *per se* because the Digital Headline was not susceptible to an innocent construction and the article's "other false and defamatory statements cannot be innocently construed." Plaintiffs also asserted that the fair report privilege does not apply where the article failed to accurately describe the federal suit and other proceedings. Plaintiffs further argued that the article "is of and concerning" Avi and the complaint sufficiently alleged special damages, a false light claim, and an IIED claim. Defendants filed a reply.

¶ 24    On February 1, 2018, a hearing was held on defendants' motion to dismiss. During the hearing, the court stated that it was "going to do away with the oral arguments" and instead, proceed to ruling. The court granted defendants' motion as to Avi's allegation, finding that Avi's name is "mentioned only once in reference to him being 40 under 40 list with Joseph" with the "next couple paragraphs [referring] to the brothers' business ventures and companies 'they started.' " The court noted that the rest of the article and all the "complainant statements refer to Fox, and the article makes it clear that Fox refers to Joseph" and not Avi. The court then granted defendants' motion as to the IIED claim with prejudice, finding that "no case law *** supports an argument that rushing an article to print is sufficient to state a claim for intentional infliction of emotional distress." Even if plaintiffs were "susceptible to intentional infliction of emotional distress," the court found that "the conduct still needs to be extreme and outrageous, which it is not here." The circuit court then entered an order granting the defendants' motion to dismiss the amended complaint in part as to Avi's claims and plaintiffs' IIED claim and denied defendants' motion to dismiss as to the remaining claims.

¶ 25                                G. Motions for Summary Judgment

¶ 26    On September 11, 2019, defendants filed their motion for summary judgment against Joseph. Defendants' motion asserted that Joseph based his defamation and false light invasion of privacy claims on only the Digital Headline and the Judge Statement. Defendants argued that they are entitled to summary judgment on the Headline claim because (1) the Headline was reasonably capable of non-defamatory construction and must be given that construction as a matter of law; (2) the Headline was rhetorical hyperbole and non-verifiable and therefore, non-actionable statements of opinion as a matter of law; (3) Joseph is a limited purpose public figure who cannot meet his burden to prove that defendants published any allegedly defamatory statement with actual malice; and (4) the statements are substantially true. Defendants contended that they were entitled to summary judgment on the Judge Statement because (1) it is protected by the fair report privilege; (2) Joseph is a limited purpose public figure who cannot meet his burden (as stated above); and (3) the statement is substantially true.

¶ 27    Defendants supported their request for summary judgment with the testimony of Joseph, the affidavits of five Ditto investors, Lynne Marek, who was the author of the article, and Craig Newman, the editor who wrote the Digital Headline "Frustrated investors led on Fox hunt in L.A."

¶ 28    Lawrence Wert, Marc Mandel, Scot Olson, Charles Parisi, and Greg Colando each provided affidavits stating that they were Ditto investors, that they lost their investments, that they were frustrated by their inability to get information from Joseph regarding Ditto's financial position, and the SEC investigation.

¶ 29    In her affidavit, Marek averred that in the course of conducting research for the article, she reviewed publicly available court records for the federal suit and the records of the SEC, as well as a report about Ditto prepared by the law firm Goldberg Kohn. She also contacted at least 15

different individuals who had knowledge about Joseph and his business. Marek understood at the time of publication that Simons alleged he was not fired "for cause" and that the district court's entry of a final judgment meant that the court agreed with Simons' claims. Marek also understood and believed that the investors she spoke to "were aggravated, frustrated, and disappointed" with Joseph's responses to their questions and his lack of availability. At no time prior to the publication of the article did she have any information that any statement in the article was false.

¶ 30      In his affidavit, Newman averred that he authored the Digital Headline. At the time he wrote the headline, Newman stated that it was his understanding and belief that Ditto investors were "aggravated, frustrated, and disappointed" because Joseph did not keep them appraised of Ditto's financial condition and failed to adequately address their concerns. This was based on his review of Marek's reporting, conversation with her, and the contents of the article. He wrote the headline "intending it to convey the idea that these investors had to 'hunt' for answers to their questions from [Joseph] who at the time was in Los Angeles." He intended the phrase "Fox hunt in L.A." to be "stylistic or rhetorical play on words with [Joseph's] surname to suggest that investors were pursing [him] for answers rather than any factual assertion." At all times prior to publication, Newman believed that the statements contained in the article were true and accurate and a "rhetorical flourish designed to convey the statements contained in the Article through a play on words."

¶ 31      On September 18, 2019, Joseph moved for partial summary judgment. In his motion, Joseph stated that "[w]hile the entire Article is replete with defamatory statements and misleading statements that lead to the permanent damage of the Plaintiffs' reputation and place [them] in a False Light, this Motion for Partial Summary Judgment is only addressing two of these statements," specifically, the Judge Statement and the Digital Headline. The motion further stated

that "[n]othing in his [m]otion *** should lead [the court] to believe that the Plaintiff does not want his day in court regarding all of the contents of the Article and the malicious purpose behind publishing it."

¶ 32    On October 28, 2019, Joseph filed a response to defendants' motion for summary judgment. In his response, Joseph argued that the headline from the print version of the article, "The Elusive Fox Who Fled to L.A." (Print Headline) was also false and defamatory. Joseph further asserted that he was not a "limited purpose public figure" and therefore, actual malice was not required. Nonetheless, defendants had actual malice in publishing the article. Finally, Joseph argued that the Judge Statement and Digital Headline constituted defamation *per se* and defendants' motion did not address his false light claim.

¶ 33                              H. December 18, 2019 Hearing

¶ 34    At the December 18, 2019 hearing on the parties' motions for summary judgment, defense counsel stated, "we're only dealing with two claims, defamation *per se* and false light; and those claims are both based upon the same two allegedly defamatory statements. We've defined them in our brief as 'the headline' and the 'judge statement.' " Defense counsel noted that defendants raised "a number of defenses for those two statements," including "innocent construction rule, opinion, fair report privilege, and substantial truth." However, "there's one defense that cuts across all claims and *** makes for an easy resolution of this case, and that is that the plaintiff has failed to show [actual malice]." Defense counsel further pointed out that the claim pertaining to the Print Headline was "never made [in] any complaint" or interrogatory.

¶ 35    After defense counsel concluded his argument, counsel for Joseph stated, "I'm going to save us all some time because for the most part, your Honor, I'm confident that your Honor read the papers, and I think the plaintiff made clear and concise arguments in the papers." With respect

to the Print Headline, plaintiff's counsel noted that "the plaintiff made a request for leave to amend the pleading on its face to conform with the proofs, and that is within the Court's discretion to grant or deny that request." The court inquired as to why the request was not "brought as a motion" to which plaintiff's counsel responded that it was a "question for prior counsel who is not on the case." The court denied leave to amend pleadings as to the Print Headline on the basis that the "way [the request] was brought was improper." Defense counsel rested.

¶ 36                                    I. December 24, 2019 Order

¶ 37    On December 24, 2019, the circuit court issued its 13-page order granting defendant's motion for summary judgment on all claims as to Joseph and dismissing the case with prejudice. The order noted that Joseph's claims were based on the Judge Statement and the Digital Headline. The court found that Joseph was a "limited-purpose figure" and was therefore, "required to demonstrate a question of material fact [existed as to] whether defendants acted with actual malice in order to survive summary judgment." The court noted that Joseph was unable to point to any evidence to demonstrate actual malice, and therefore, summary judgment was appropriate. The court further found that the Judge Statement and the Digital Headline were substantially true and the Digital Headline was subject to an innocent construction. With respect to the false light claims, the court found that it required a showing of actual malice and plaintiff again failed to make any kind of showing as to malice. Plaintiffs appealed.

¶ 38                                    II. ANALYSIS

¶ 39    On appeal, plaintiffs, proceeding *pro se*, contend that their claims were based not only on the Digital Headline and the Judge Statement but also on eight additional highly defamatory statements that the court did not consider. Specifically, plaintiffs assert that their amended complaint incorporated Exhibit 7 by reference which included other "falsities" pertaining to the

article which the court did not discuss. Plaintiffs also assert that Avi was in fact defamed in the article, the court erred "when it reversed course on the defamatory nature of the claim that a federal judge agreed with Simons," and the Headline cannot be innocently construed.

¶ 40    Defendants point out that plaintiffs are appealing from two orders of the circuit court. One of the orders is the motion to dismiss Avi's claims and the other is the grant of summary judgment against Joseph. Defendants contend that this court should (1) strike plaintiffs' brief and dismiss the appeal for numerous violations of Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020); (2) find that plaintiffs have waived all claims based on Exhibit 7; and (3) affirm on the same grounds as the circuit court; or (4) alternatively, find that the Digital Headline constitutes non-actionable opinion and that the Judge Statement is protected by the fair report privilege. Lastly, defendants argue that the circuit court correctly held that the amended complaint failed to include any defamatory statement that was "of or concerning" Avi Fox.

¶ 41                        A. Motion to Strike & Dismiss Appeal

¶ 42    At the outset, we must address defendants' motion to strike plaintiffs' brief and dismiss the appeal for failure to comply with Supreme Court Rule 341. Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) governs the contents of an appellant's brief. "The rules of procedure concerning appellate briefs are rules and not mere suggestions." *Niewold v. Fry,* 306 Ill. App. 3d 735, 737 (1999). We agree with defendants that plaintiffs' brief suffers from several deficiencies. Although defendant's brief follows an appropriate format in that it contains headings like "Nature of the Case," "Issues Presented," "Statement of Facts," and "Argument," the substantive content is nowhere near as proper. First, we note that plaintiffs improperly engage in argument in their statement of the facts and as defendants point out, fail to regularly cite to the record. See Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020) (Statement of Facts "shall contain the facts necessary to an

understanding of the case, stated accurately and fairly without argument or comments, and with appropriate reference to the pages of the record on appeal.").

¶ 43 Next, Rule 341(h)(7) requires that the argument section "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Like their statement of facts, plaintiffs fail to include citations to the relevant pages of the record. Further, plaintiffs' arguments as to the defamatory nature of the statements, which forms the basis of their suit and issues on appeal, are also not supported by citations to legal authority as required by Rule 341(h)(7). Instead, the argument section of plaintiffs' brief contains only citations to the standard of review for granting a motion for summary judgment and citations for the proposition that exhibits incorporated by reference constitute part of the pleading. Although we recognize that plaintiffs have elected to proceed *pro se*, this does not excuse noncompliance with our court rules. *Fryzel v. Miller*, 2014 IL App (1st) 120597, ¶ 26. (*Pro se* litigant is not relieved of obligation to comply with the appellate practice rules and failure to comply is not excused.).

¶ 44 Additionally, the reviewing court "is not a depository into which the burden of research may be dumped." *Campbell v. Wagner,* 303 Ill. App. 3d 609, 613 (1999). The failure to provide cohesive, organized arguments supported by legal citation may result in waiver of a party's claims. *Calomino v. Board of Fire and Police Commissioners of Village of Schaumburg,* 273 Ill. App. 3d 494, 501 (1995); see also *Twardowski v. Holiday Hospital Franchising, Inc.*, 321 Ill. App. 3d 509, 511, (2001) (This court is "entitled to have briefs submitted that present an organized and cohesive legal argument in accordance with the Supreme Court Rules."). Where an appellant fails to comply with the applicable rules of appellate procedure, this court may, in its discretion, strike a brief and dismiss the appeal. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. In view of these principles,

we are entitled to strike plaintiffs' brief or dismiss the appeal based on violations of Rule 341. However, we choose to exercise our discretion to review this appeal.

¶ 45                                    B. Standard of Review

¶ 46    Although plaintiffs' nature of the case section states that the "appeal is taken" from the circuit court's grant of defendants' motion for summary judgment, the record, notice of appeal, and arguments presented on appeal make it clear that this appeal is being taken from both the circuit court's grant of defendant's motion to dismiss as to Avi's claims and motion for summary judgment as to Joseph's claims. As such, we set out the standards of review governing motions to dismiss and summary judgment.

¶ 47    A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *Bueker v. Madision County*, 2016 IL 120024, ¶ 7. In reviewing a section 2-615 motion to dismiss, the court takes all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *Edelman, Combs & Latturner v. Hinshaw and Culbertson*, 338 Ill. App. 3d 156, 156-57 (2003). We review the circuit court's decision to grant a section 2-615 motion to dismiss *de novo*. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006).

¶ 48    In contrast, summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). In determining whether there is a genuine issue of fact, a court must construe the pleadings and record strictly against the movant and liberally in favor of the nonmoving party. *Shannon Court Condominium Association v. Armada Express Inc.*, 2020 IL App (1st) 192341, ¶ 11. Summary judgment is a drastic means of disposing litigation that should be

granted only where the moving party's right to judgment is clear and free from doubt. *Adames v. Sheahan*, 233 Ill. 2d 276, 295-96 (2009). We may affirm the circuit court's ruling on a motion for summary judgment on any basis in the record, regardless of the reasoning employed by the court. *Kainrath v. Grider*, 2018 IL App (1st) 172270, ¶ 19. Our review of an order granting summary judgment is also *de novo. Sears, Roebuck and Company v. Acceptance Insurance Co.*, 342 Ill. App. 3d 167, 171 (2003).

¶ 49                                      C. Avi's Claims

¶ 50    Avi contends that he was in fact defamed in the article. An essential element of any defamation action is that an alleged defamatory statement be "of and concerning the plaintiff," (*i.e.*, that the statements in question refer to the specific plaintiff). S*chiarelli v. CBS, Inc.*, 333 Ill. App. 3d 755, 765 (2002). The "requirement in a defamation case that the statement be 'of and concerning the plaintiff' is equally applicable to a false light claim." *Id.*

¶ 51    Here, the alleged defamatory statements are not "of and concerning "Avi. He cannot state any defamation or false light claims based on the article because the two statements at issue in the amended complaint both specifically and exclusively refer to Joseph. Moreover, the article only mentions Avi to the extent that it states that he was named to *Crain's* 40 under 40 list of prominent Chicago businessmen in 2000 and that he co-founded Ditto and other business ventures with Joseph. We cannot see how these statements would lead a reasonable person to believe that the alleged defamatory statements against Joseph were also made against Avi. See *Velle Transcendental Research Ass'n, Inc. v. Esquire, Inc.*, 41 Ill. App. 3d 799, 803 (1976) (plaintiff not named in the allegedly defamatory statement must allege that third parties must have reasonably understood that the statement was of and concerning that plaintiff); *Myers v. The Telegraph*, 332 Ill. App. 3d 917, 928 (2002) (article was not "of and concerning" wife where it referred to the last

name both spouses shared). A reasonable person would not find that Avi was also being defamed. Therefore, we find that the circuit court did not err in granting defendants' motion to dismiss as to Avi's claims.

¶ 52    Having found that Avi cannot state a claim based on the article, we now turn to address the remaining claims as they pertain to Joseph.

¶ 53                               D. Joseph's Claims

¶ 54                               1. Defamation

¶ 55    Joseph argues that the circuit court erred in granting summary judgment in favor of defendants because it "ignored the fact that the [p]laintiffs actual claims in the [c]omplaint included a minimum of eight highly defamatory statements, both [*per se* and *per quod*]." To establish a defamation claim, a plaintiff must present sufficient facts establishing that: (1) the defendant made a false statement about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) the publication caused damages. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). Defamatory statements are actionable either *per se* or *per quod*. Statements are defamatory *per se* if "the statements that form the basis of the action *** falsely charge the plaintiff with misconduct or incapacity in words so obviously and naturally harmful that they are actionable without proof of special damages." *Costello v. Capital Cities Communications, Inc.*, 125 Ill. 2d 402, 414 (1988). In fact, no showing of special damages (*i.e.*, damages of a pecuniary nature) is required for statements that are defamatory *per se*. *Id.*

¶ 56    Illinois recognizes five categories of statements that are considered defamatory *per se*: "(1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability

or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication." *Green*, 234 Ill. 2d at 491-92. "Although a complaint for defamation *per se* need not set forth the allegedly defamatory words *in haec verba,* the substance of the statement must be pled with sufficient precision and particularity so as to permit initial judicial review of its defamatory content" and allow the defendant to properly formulate an answer and identify affirmative defenses. *Id.* at 492.

¶ 57    In contrast, a cause of action for defamation *per quod* may be brought under two sets of circumstances. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 103 (1996). First, a cause of action for defamation *per quod* may exist where the defamatory character of the statement is not apparent on its face, but extrinsic facts demonstrate an injurious meaning. *Id.* Second, a claim of defamation *per quod* is appropriate when the statement is defamatory on its face, but does not fall within one of the five recognized categories of defamation *per se. Id.* A plaintiff may only prevail on a claim for defamation *per quod* if the plaintiff pleads and proves special damages, which are actual damages of a pecuniary nature. *Hill v. Schmidt*, 2012 IL App (5th) 110324, ¶ 25.

¶ 58    We note that plaintiffs' brief fails to identify which statements constituted defamation *per se* and defamation *per quod.* Nevertheless, we reject Joseph's contention that he can prevail on a claim for defamation *per quod*. In their amended complaint, plaintiffs did not allege that they suffered actual monetary damages because of defendants' defamatory statements. Plaintiffs only alleged that they have "suffered substantial and irreparable damages, and will continue to suffer damages, including but not limited to loss of income, loss of good name, loss of reputation, loss of business, as well as embarrassment, shame, humiliation and emotional distress." However, "[g]eneral allegations such as damage to one's health or reputation, economic loss [*i.e.*, loss of salary], and emotional distress are insufficient to state a cause of action for defamation *per quod*."

*Maag v. Illinois Coalition for Jobs, Growth and Prosperity*, 368 Ill. App. 3d 844, 853 (2006) (quoting *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 694 (2000)). Rather, special damages must be alleged. Because Joseph failed to allege special damages, we reject his defamation *per quod* claims.

¶ 59                                    a. Actual Malice

¶ 60    Regardless of whether a defamation claim involves statements that are alleged to be defamatory *per se* or *per quod*, where the offending statement is made by a member of the press or a media organization about a plaintiff who is a public figure, the plaintiff "may not obtain redress in a libel action unless he proves that the allegedly defamatory statements were made with actual malice." *Costello*, 125 Ill. 2d at 418-19 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)). Individuals who are limited purpose public figures (*i.e.*, those who thrust themselves in the forefront of particular public controversies to influence the resolution of the issues involved), need to "establish actual malice only in those instances where the purported libelous statements were sufficiently connected to controversies in which they have chosen to accept a leadership role." *Kessler v. Zekman*, 250 Ill. App. 3d 172, 181 (1993). The inquiry as to whether a statement was made with actual malice is subjective. *Wanless v. Rothballer*, 115 Ill. 2d 158, 170 (1986) (citing *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 51 (1984)). The plaintiff must prove by clear and convincing evidence that defendants "published the defamatory statements with knowledge that the statements were false or with reckless disregard for their truth or falsity." *Costello*, 125 Ill. 2d at 419. Reckless disregard for the truth may be found "where the evidence shows that the defendant in fact entertained serious doubts as to the truth of the publication." *Id.* Further, a "[f]ailure to investigate does not itself establish actual malice if the defendants did not seriously doubt the truth of their assertions." *Id.* at 421. We will "infer that a

media defendant published defamatory statements in reckless disregard for their truth only when the defendant's investigation has revealed either insufficient information to support the defamatory accusations in good faith or creates a substantial doubt as to the truth of those accusations." *Id.*

¶ 61 We find that the circuit court correctly held that Joseph was a limited purpose public figure and thus, a showing of actual malice is required. In determining whether an individual may qualify as a limited public figure, Illinois has adopted the three-part test articulated in *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980). See *Kessler*, 250 Ill. App. 3d at 181. First, there must be a public controversy, which means an issue that is publicly debated, and the outcome of which impacts the general public or some portion of it in an appreciable way. *Waldbaum*, 627 F.2d at 1296. A matter of general public interest or concern is not sufficient. *Id.* Second, the plaintiff must have undertaken some voluntary act seeking to influence the resolution of the issues involved. *Waldbaum*, 627 F.2d at 1297. Finally, "the alleged defamation must have been germane to plaintiff's participation in the controversy." *Kessler*, 250 Ill. App. 3d at 182 (quoting *Waldbaum*, 627 F.2d at 1298).

¶ 62 Here, there was a public controversy surrounding the use of online technology to bring amateur traders into the regulated securities market. Joseph thrusted himself into the controversy through Ditto, a company he co-founded which allowed users of its proprietary technology to trade in securities markets by emulating more experienced traders. As the circuit court noted, this model represented "a substantial departure from the trading norms and requirements established by the SEC." The court correctly noted that "[w]hile the SEC has *** proposed expanding the Accredited Investor definition, the proposed requirements nevertheless require a demonstration of sophistication; by contrast, Ditto's platform was marketed as an opportunity for *unsophisticated*

investors." As such, it implicates "foreseeable and substantial ramifications for nonparticipants" and therefore, impacts the general public or some portion of the population.

¶ 63    Next, the record demonstrates Joseph's active role in the public controversy. He made regular media appearances and utilized the business press to promote his views regarding the role of technology in the securities industry and to publicize his companies' abilities to offer social media platforms that would enable customers to gain expertise in regulated securities markets. Joseph testified as an expert before Congress regarding the rapid consumer adoption of online stock trading and related concerns pertaining to security features and protection of investors in trading technology. He also appeared as an expert on CNBC to opine on whether "Wall Street needed to get more humans back to trading" and has been featured in numerous publications for expressing his opinions about the securities industry. Finally, the statements in the article were germane to plaintiff's participation in the controversy. The article stated that Joseph had launched Ditto which provided a platform for amateur traders. The article then stated that Ditto became a subject of a "barrage of beefs," including SEC investigations and sanctions. These statements were germane to plaintiff's participation in the controversy. Therefore, we find that Joseph was a limited purpose public figure.

¶ 64    Our inquiry next turns to whether Joseph sufficiently alleged actual malice. The affidavits of Marek and Newman (who authored the article and headline) provide that they never entertained serious doubts as to the truth of the publication. At no time prior to the publication of the article did Marek have any information that any statement in the article was false. Similarly, at all times prior to publication, Newman believed that the statements contained in the article were true and accurate. Joseph has failed to prove, by clear and convincing evidence, that defendants "published the defamatory statements with knowledge that the statements were false or with reckless disregard

for their truth or falsity." *Costello*, 125 Ill. 2d at 419. Absent clear and convincing evidence, we cannot find that the element of actual malice has been met.

¶ 65                                    b. Substantial Truth

¶ 66     Although we need not address Joseph's argument that the Judge Statement and the Digital Headline were defamatory in nature because they were also false, we note that substantial truth doctrine is a defense to a defamation claims. *Lemons v. Chronicle Publishing Co.*, 253 Ill. App. 3d 888, 890 (1993). Generally, a defendant is not liable for a defamatory statement if the statement is true. *J. Maki Construction Co. v. Chicago Regional Council of Carpenters*, 379 Ill. App. 3d 189, 203 (2008). While "substantial truth" can be an affirmative defense to a defamation suit, falsity is also an element of the defamation cause of action. *Kapotas v. Better Government Ass'n*, 2015 IL App (1st) 140534, ¶ 34. To be substantially true does not mean that every detail of the statement needs to be accurate. *Coghlan v. Beck*, 2013 IL App (1st) 128891, ¶ 42. The defendant bears the burden of establishing the substantial truth of the assertions, which can be accomplished by showing that the "gist" or "sting" of the defamatory material is true. *Id.* The question of substantial truth is normally a question for the jury, but "where no reasonable jury could find that substantial truth had not been established, the question is one of law." *Harrison v. Chicago Sun-Times, Inc.*, 341 Ill. App. 3d 555 (2003).

¶ 67     The crux of Joseph's argument is that the Judge Statement, which stated that the district court "agreed with Simons," was defamatory because the district court's ruling was procedural (*i.e.*, not on the merits). Essentially, Joseph contends that the district court did not rule on the merits of Simons' retaliatory discharge claims but instead entered a judgment based on default. Although the article could have highlighted the default nature of the judgment, the statement that the court "agreed with Simons" was "substantially true." See *Coghlan*, 2013 IL App (1st) 128891, ¶ 42 (not

every detail of the statement needs to be accurate to be "substantially true."). The record shows that on September 13, 2016, Joseph contested that the judgment was on the merits. The district court disagreed with Joseph and noted that it was a "default judgment" and "well, default judgment is on the merits." As such, it was substantially true that the district court agreed with Simons, where it disagreed with Joseph. Therefore, no reasonable jury could determine that substantial truth had not been established.

¶ 68    With respect to the Digital Headline claiming that "Frustrated investors led on Fox hunt in L.A.," Marek's affidavit stated that she understood and believed that the investors she spoke to "were aggravated, frustrated, and disappointed" because of Joseph's responses to their questions and his lack of availability. This was corroborated by the affidavits of five Ditto investors who stated that they were frustrated by their inability to get information from Joseph regarding Ditto's financial position. Although defendants had information that Joseph lived in Los Angeles at least part time when the article was published, their description is nevertheless substantially true because Joseph had ceased his Chicago operations, was in Los Angeles, and was unavailable to address the investors' concerns. Thus, a reasonable jury could find that substantial truth had been established. Further, we note that the words "Fox Hunt" in the Digital Headline appears to be a play on words, combining Joseph's surname with a figure of speech. It is a rhetorical hyperbole because it is understood in context "as an exaggeration rather than a statement of literal fact." See *Kolegas v. Heftel Broadcasting Corp.,* 154 Ill. 2d at 15 (citing *Greenbelt Cooperative Publishing Association, Inc. v. Bresler,* 398 U.S. 6 (1970)). As such, the Digital Headline does not constitute a defamatory statement.

¶ 69    We also reject plaintiff's contention that the court failed to analyze the other eight defamatory statements in the amended complaint that were incorporated by reference to Exhibit 7.

Plaintiffs' amended complaint merely stated, without more, that "[f]or a more detailed analysis of the falsities of the June 13, 2016 Article, See Exhibit 7." The amended complaint did not allege that those statements were also defamatory and served as the basis of plaintiffs' claim. More importantly, plaintiffs have waived this argument where they did not raise it before the circuit court. *Cambridge Engineering, Inc. v. Mercury Partners*, 378 Ill. App. 3d 437, 453 (2007). The record shows that plaintiff did not raise this issue in their response to defendants' motion for summary judgment. Further, during the hearing on the parties' motions for summary judgment, defense counsel stated that the issues in the case pertained to only two statements. Plaintiffs' counsel failed to object to this characterization of the dispute during the hearing. See *Village of Arlington Heights v. Anderson*, 2011 IL App (1st) 110748, ¶ 15 ("Theories not raised during summary judgment proceedings are waived on review."). As such, plaintiffs have waived this argument.

¶ 70                                              2. False Light

¶ 71    Joseph's false light claims reincorporate and re-allege the facts pertaining to his defamation claim. A claim of false light invasion of privacy serves to protect "one's interest in being let alone from offensive publicity." *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 734 (1990). The three elements required to establish a cause of action for false light invasion of privacy are: (1) the plaintiff was placed in a false light before the public because of defendant's actions; (2) the false light would be highly offensive to a reasonable person; and (3) defendant acted with actual malice. *Chang Hyun Moon v. Kang Jun Liu*, 2015 IL App (1st) 143606, ¶ 17.

¶ 72    "Although the causes of action of false light and defamation overlap ***, they are different." *Kirchner v. Greene*, 294 Ill. App. 3d 672, 682 (1998). Our supreme court noted that the existence of defamation is not a requirement for false light claims. See *Lovgren v. Citizens First*

*National Bank*, 126 Ill. 2d 411, 421 (1989) ("all defamation cases can be analyzed as false-light cases, but not all false-light cases are defamation cases."). However, where the plaintiff has failed to state a cause of action for defamation *per se*, this court has held the claim of "invasion of privacy (false light), must fail as well." *Harte v. Chicago Council of Lawyers*, 220 Ill. App. 3d 255, 263 (1991); see also *Kapotas v. Better Government Association*, 2015 IL App (1st) 140534, ¶ 75 ("where the plaintiff fails to state a cause of action for defamation *per se*, a count alleging false-light invasion of privacy based on the allegedly inherently defamatory statements must fail as well"); *Seith v. Chicago Sun-Times, Inc.*, 371 Ill. App. 3d 124, 139 (2007) ("because the plaintiff's unsuccessful defamation *per se* claim is the basis of his false-light claim, plaintiff's false-light invasion of privacy claim fails as well"). Because Joseph has failed to establish the elements necessary to sustain his claim for defamation *per se*, we find that plaintiffs' claims of false light fail for the same reasons. Additionally, as previously discussed, Joseph has failed to show actual malice. Where no evidence of actual malice exists, there is no cause of action for false light invasion of privacy.

¶ 73                                    III. CONCLUSION

¶ 74    For the reasons stated, we affirm the judgment of the circuit court.

¶ 75    Affirmed.