# Illinois Official Reports

## Appellate Court

---

### *Chang Hyun Moon v. Kang Jun Liu*, 2015 IL App (1st) 143606

---

| | |
|---|---|
| Appellate Court Caption | CHANG HYUN MOON, Plaintiff-Appellant, v. KANG JUN LIU, DU SAE YI, KYUNG JA KIM, KYUNG JA PARK, SOON KYU CHOI, KI SOOK LIU, ME HO LEE, AHN OK CHOI, IN WON JIN, JUNG RYE PARK, IL KOOK CHUNG, CHIK JA LEE, OK SIK SEO, EUI NAM PARK, CHUN HYO PARK, SA SOON CHUNG, MIN KOO LEE, YONG WOON SEO, SOON GIL PARK and SAE JUNG KIM, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-3606 |
| Filed | October 29, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-L-005343; the Hon. John P. Callahan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James B. Koch and Michelle M. LaGrotta, both of Gardiner Koch Weisberg & Wrona, of Chicago, for appellant.<br><br>W. Dan Lee, of Lee Law Offices, Ltd., of Los Angeles, California, for appellees. |
| Panel | PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Justices Howse and Cobbs concurred in the judgment and opinion. |

¶ 1    Plaintiff, Chang Hyun Moon, brought an action against defendants, Kang Jun Liu *et al.*, alleging causes of action for defamation *per quod*, false light invasion of privacy, and intentional infliction of emotional distress. The circuit court granted defendants' motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)) and dismissed plaintiff's first amended complaint with prejudice. Plaintiff appeals.

¶ 2    The record shows that on May 19, 2014, plaintiff filed a three count verified complaint against defendants, followed by a first amended complaint filed on August 13, 2015, alleging that defendants, members of the Lakeview Korean Presbyterian Church in Niles, Illinois, had committed defamation *per quod*, false light invasion of privacy, and intentional infliction of emotional distress against him when they signed a May 19, 2013, memorandum entitled "Reprimand of Deacon Moon" and published it to "multiple third parties" both within and outside of the church.

¶ 3    A copy of the petition, which was originally written in the Korean language, was attached to the complaint, as well as an English translation of that document. The petition alleged that plaintiff did "not know his duty and continue[d] to agitate the Church." It requested that plaintiff be "penalize[d] *** in order to help the Church recover from the disorder and agitation [plaintiff] originally created." The petition then listed a number of alleged instances of misconduct, including, among other things, that plaintiff engaged in "slander" regarding the church leaders, encouraged "backbiting" of them, and avoided worship time by hiding in the cafeteria or smoking by the back door. The petition further alleged that plaintiff promoted a "split in the church" and interfered with the process of electing elders. It also indicated that he had threatened to report the details of church members' offerings to the Internal Revenues Service (IRS) and that he had sent a subpoena to a bank requesting all of the church's financial documents.

¶ 4    Out of these several alleged acts of misconduct, plaintiff's complaint only specifically objected to one: that he verbally threatened to report the details of church members' offerings to the IRS. Plaintiff averred that this statement was false, and that he "never threatened to report the details of church members' offerings to the IRS." He alleged that this defamatory statement "harmed [plaintiff's] reputation within the greater Chicago area Korean community by lowering other's perceptions of him and deterring them from associating with him." He explained that,

> "there are many legal and illegal immigrants *** in the greater Chicago Korean community [who] understand that they are generally to avoid unnecessary involvement with the federal government. The false statement, however, suggests that [plaintiff] is willing to report greater Chicago area Korean community members he associates with to federal authorities for perceived misconduct."

¶ 5    Plaintiff maintained that the statement harmed him and his children, because the "Korean culture of 'honor' dictates that the consequences of offenses to the father's honor are also suffered by subsequent familial generations," meaning that "because [plaintiff] is now perceived as acting dishonorably, his children will also be presumed dishonorable." He further maintained that the statement caused his wife to file a petition for dissolution of marriage against him, and as a result, he was forced to "incur attorney's fees and the costs associated

with participating in the divorce proceeding." He attached a copy of the petition for dissolution of marriage filed by his wife, Oie Za Moon, in which she stated that plaintiff:

"had issues with the church. Many members of the church appealed to a higher level of the church complaining of [plaintiff's] behavior. Further, the Pastor said [plaintiff] made false statements to a higher level of the church. Some elders also accused [plaintiff] of seeking to borrow money from them. [Plaintiff] denied this but Petitioner, OIE ZA MOON, lost trust and respect for her husband and vice versa causing irreconcilable differences."

¶ 6 On August 19, 2014, defendants filed a motion to dismiss plaintiff's first amended complaint pursuant to section 2-615 of the Code, arguing, among other things, that plaintiff's legal fees in his divorce did not constitute special damages for purposes of defamation *per quod*, that he could not prove the actual malice element to establish a claim of false light invasion of privacy, and that he could not show that his wife's filing for divorce was proximately caused by the defendants' conduct to establish his claim for intentional infliction of emotional distress.

¶ 7 On October 27, 2014, the court entered a written order granting defendants' motion to dismiss pursuant to section 2-615 of the Code. In that order, the court concluded that plaintiff's "allegations of defamation *per quod* are fatally flawed, because he suffered no special damages as a result of the allegedly defamatory publication." The court rejected plaintiff's claim that the divorce action was caused by defendants' allegedly defamatory statement, reasoning that plaintiff had indicated that his wife heard about the petition from members of a different church, but "[i]f the couple was living together at the time of publication, Plaintiff's wife would have learned about the petition in the church where Plaintiff was a deacon." The court concluded that the alleged damages were not proximately caused by the publication and that plaintiff was "attempting to recover his unrelated divorce expenses by alleging defamation against 20 congregants from his church."

¶ 8 Regarding plaintiff's claim for false light invasion of privacy, the court found that plaintiff could "never satisfy the second element": that the false light would be highly offensive to a reasonable person. The court observed that plaintiff "has pled facts showing that the false light is offensive to members of the Korean community with strong ties to the Korean Presbyterian Church. However, the false light must be highly offensive to a reasonable person. There is no special standard that applies to ethnic minorities with devout religious practices."

¶ 9 Finally, the court concluded that plaintiff's action for intentional infliction of emotional distress also failed, because the "publication of a petition to the church hierarchy is not extreme and outrageous conduct," and "[p]laintiff has not pled facts to support allegations of severe emotional distress." The court dismissed plaintiff's amended complaint with prejudice, and plaintiff appealed.

¶ 10 In this court, plaintiff maintains that the court erred in dismissing his amended complaint with prejudice, because he "adequately pled" his three causes of action, and the court failed to construe the allegations of his complaint in the light most favorable to him.

¶ 11 A section 2-615 motion to dismiss tests the legal sufficiency of a complaint, *i.e.*, whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, state sufficient facts to establish a cause of action upon which relief may be granted. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). When ruling on a section 2-615 motion to dismiss, the court must accept as true all well-pled facts in the complaint and reasonable inferences drawn

therefrom. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86 (1996). We do not, however, take mere conclusions of law or fact contained within the challenged pleading as true unless they are supported by specific factual allegations. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47 (1991). When reviewing an order granting a motion to dismiss pursuant to section 2-615, this court applies *de novo* review (*Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 516 (1998)), and we may affirm the trial court's dismissal for any reason supported by the record, regardless of the trial court's reasoning (*Lieberman v. Budz*, 356 Ill. App. 3d 932, 937 (2005)).

¶ 12    We first turn to defendant's argument that the court erred in dismissing his claim for defamation *per quod*. A statement is considered defamatory "if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10 (1992) (citing Restatement (Second) of Torts § 559 (1977)). Statements may be considered defamatory *per se* or *per quod*. *Id*. Statements are defamatory *per se* when the defamatory character of the statement is apparent on its face, that is, the statement is so obviously harmful to the plaintiff that damages may be presumed. *Id*. In Illinois, courts have recognized four categories of statements that are considered defamatory *per se*: (1) words that impute commission of a crime; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; and (4) words that prejudice a party, or impute a lack of ability, in his or her trade, profession or business. *Id*.

¶ 13    Here, the allegedly defamatory statement at issue is the allegation in defendants' memorandum that plaintiff had been "threatening verbally to report the details of church member's [*sic*] offerings to the IRS." Plaintiff acknowledges that this statement does not fit within the categories of defamatory *per se* statements and instead contends that it qualifies as defamation *per quod*, which applies in situations where the defamatory character of the statement is not apparent on its face but extrinsic facts explain its injurious meaning. *Id*. Specifically, plaintiff points to the following "extrinsic facts" alleged in his first amended complaint: "that the Korean culture is one of honor; that the Korean community in the Greater Chicago area generally avoids any unnecessary involvement with the federal government because many in the community are undocumented; that reporting to the IRS or otherwise having unnecessary involvement with the federal government is considered dishonorable; that [plaintiff's] dishonor would also be suffered on [*sic*] his children; that others will view [plaintiff] as cooperative with the federal government and avoid him; and that [plaintiff's] wife lost trust and respect for him." He alleges that these facts, "when viewed in the light most favorable to [plaintiff], are sufficient to establish the injurious meaning."

¶ 14    Even if we were to accept plaintiff's contention that these "facts" could establish the injurious nature of the defendants' statement, we conclude that plaintiff's defamation *per quod* claim must fail. While damages are presumed in cases of defamation *per se*, a plaintiff pursuing a claim of defamation *per quod* must allege that he suffered special damages, or "actual damage of a pecuniary nature," as a result of the defamatory statement. *Bryson*, 174 Ill. 2d at 87-88.

¶ 15    Here, plaintiff contends that he showed the required special damages, where his wife "specifically referenced defendants' defamatory memorandum" in her divorce petition as a reason for her divorce, and he "incurred attorneys' fees and costs stemming from the divorce." We disagree.

- 4 -

¶ 16　　In the petition for dissolution of marriage, plaintiff's wife generally referenced the fact that plaintiff had "issues with the church" and that members of the church had "complain[ed] of [plaintiff's] behavior." She specifically stated that she heard that plaintiff made "false statements to a higher level of the church" and that he had been "accused *** of seeking to borrow money" from the elders. However, nowhere in her petition did she specifically reference the defendants' memorandum, or the allegedly defamatory statement here: that plaintiff threatened to report members' offerings to the IRS. It is clear that plaintiff and the church had a variety of issues as the memorandum listed a number of alleged acts of misconduct, only one of which plaintiff has now challenged as defamatory. Without any facts which would support a finding that plaintiff's wife's filing was caused specifically by the allegedly defamatory statement at issue here, we can find no causal connection between the statement and plaintiff's purported special damages. In other words, there is nothing in the record which would allow a trier of fact to infer that plaintiff's wife filed for divorce *because* defendants' claimed that plaintiff threatened to turn in church members to the IRS, rather than any of plaintiff's other "issues" with the church or alleged misconduct. See *Maag v. Illinois Coalition for Jobs, Growth & Prosperity*, 368 Ill. App. 3d 844, 853 (2006) (affirming the dismissal of the plaintiff judge's defamation *per quod* claim under section 2-615 of the Code, where the allegations that the defendants' negative campaign flyer caused him to lose a retention election, thereby losing the related salary and benefits, was " 'far too speculative and uncertain to entertain' as special damages" (quoting *Aycock v. Padgett*, 516 S.E.2d 907, 910 (N.C. Ct. App. 1999))). As such, we conclude that plaintiff failed to state a claim for defamation *per quod*, and the dismissal of his claim was proper.

¶ 17　　We next consider plaintiff's false light invasion of privacy claims. To sustain a cause of action for false light invasion of privacy, a plaintiff must allege that: (1) he was placed in a false light before the public as a result of the defendant's actions; (2) the false light would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice. *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 696 (2000). Additionally, if a false light invasion of privacy claim is based on statements that are not defamatory *per se*, a plaintiff must allege that he suffered special damages. *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 736 (1990).

¶ 18　　Plaintiff's false light invasion of privacy claim is premised on the same allegedly false statement which formed the basis of his defamation claim–a statement which plaintiff acknowledges does not constitute defamation *per se*. Because we previously held that plaintiff's purported special damages were insufficient to support his defamation *per quod* count, we likewise conclude that they do not support a claim for false light invasion of privacy.

¶ 19　　Moreover, we note that in plaintiff's first amended complaint, he pleaded only that the statement would have been "highly offensive to a reasonable person in the greater Chicago area Korean community." The circuit court dismissed this count, reasoning that it requires that the false light is highly offensive to *a reasonable person*, and "[t]here is no special standard that applies to ethnic minorities with devout religious practices." We agree.

¶ 20　　At best, plaintiff appears to allege that as a member of "the greater Chicago area Korean community," he was hypersensitive to an accusation which would not otherwise offend a person who is not a part of that community. However, our supreme court has cautioned that false facts that offend a hypersensitive individual will not satisfy the reasonable person element of false light invasion of privacy. *Lovgren v. Citizens First National Bank of Princeton*, 126 Ill. 2d 411, 420 (1989). For a statement to be highly offensive, a defendant must

have known that a plaintiff, *as a reasonable person*, would have been justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity. *Id.*

¶ 21 In this respect, we find *Bitsie v. Walston*, 515 P.2d 659 (N.M. Ct. App. 1970), from the New Mexico Court of Appeals, instructive. In that case, the plaintiff, a Navajo child, brought an action for invasion of privacy through her father in relation to the use of her photograph in an article referencing cerebral palsy. Plaintiff claimed that the use of her picture in the news story was offensive based on traditional Navajo beliefs, because it " 'wished her harm' " and meant that she would "have bad luck later in life." *Id.* at 662. The New Mexico Court of Appeals concluded that, while there was evidence that "the newspaper story was offensive to traditional Navajos," the court could not "as a matter of law, equate an offense to persons holding such a belief with an offense to persons of ordinary sensibilities." *Id.* The court then affirmed the directed verdict for the defendants on the plaintiff's invasion of privacy claim.

¶ 22 Similarly, in this case, the facts pled by plaintiff relate only to why the defendants' allegedly false statement would be considered offensive within "the greater Chicago area Korean community." Plaintiff, however, alleged no facts showing that the false light would have been offensive to *a reasonable person*, and, in the absence of any such facts, plaintiff's false light invasion of privacy claim was properly dismissed.

¶ 23 Finally, we turn to plaintiff's claim of intentional infliction of emotional distress. In order to state a cause of action for intentional infliction of emotional distress, a plaintiff must adequately allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress. *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988). If the complaint fails to make a sufficient showing of any one of the three elements, it fails as a matter of law.

¶ 24 Here, plaintiff makes bald assertions that defendants' conduct was "extreme and outrageous" and that defendants "intended to inflict severe emotional distress or *** knew that there was a high probability that their conduct would do so." Illinois is a fact pleading jurisdiction, and a pleading which merely paraphrases the elements of a cause of action in conclusory terms is not sufficient. *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155 (1999) (citing *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 423-27 (1981)). Moreover, because claims alleging intentional infliction of emotional distress can be easily made, this court has indicated that such claims must be "specific, and detailed beyond what is normally considered permissible in pleading a tort action." *McCaskill v. Barr*, 92 Ill. App. 3d 157, 158 (1980). Because plaintiff has not provided any facts which would support his claims, his assertions as to these two elements are mere conclusions, which are insufficient to preclude dismissal. *Doe v. Calumet City*, 161 Ill. 2d 375, 385 (1994) ("mere conclusions of law or fact unsupported by specific factual allegations in a complaint are disregarded on a motion to dismiss"), *abrogated on other grounds by DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 518 (2006).

¶ 25 Moreover, we do not find defendants' conduct in signing a petition which included an allegation that plaintiff had threatened to report church members to the IRS to be extreme and outrageous. Whether conduct is extreme and outrageous is evaluated on an objective standard based on all of the facts and circumstances. *McGrath*, 126 Ill. 2d at 90. Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions or trivialities" (*Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 89-90 (1976)), and the infliction of such

emotional distress as fright, horror, grief, shame, humiliation and worry is not sufficient to give rise to a cause of action (*Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 38 (1997)).

¶ 26       As our supreme court has explained, liability for intentional infliction of emotional distress only arises in circumstances where the defendant's conduct is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.' " *Public Finance Corp.*, 66 Ill. 2d at 90 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

¶ 27       This element sets a high bar for the type of conduct which will create liability, and courts have found that conduct far more egregious than that which is alleged to have been committed by defendants' in this case, to not be extreme and outrageous. See, *e.g.*, *Khan v. American Airlines*, 266 Ill. App. 3d 726 (1994) (affirming dismissal of intentional infliction of emotional distress claim over the plaintiff's allegations that defendants knowingly sold a stolen airline ticket to him, causing him to be arrested and charged with theft, despite being aware that he was en route to his father's funeral), *abrogated on other grounds by Velez v. Avis Rent A Car System, Inc.*, 308 Ill. App. 3d 923, 928 (1999); *Public Finance Corp.*, 66 Ill. 2d at 94-95 (affirming dismissal of the plaintiff's complaint alleging that the defendant creditor called her and visited her home several times weekly over a seven-month period, called her at her daughter's hospital bed, induced her to write a check by promising that it would not be processed, and then informed one of her acquaintances that she was writing bad checks); *Tabora v. Gottlieb Memorial Hospital*, 279 Ill. App. 3d 108, 120 (1996) (affirming dismissal over the plaintiff doctor's allegations that the defendants engaged in a " 'five year campaign of harassment and intimidation' " by falsely claiming that he was incompetent, revoking his privileges, and constantly berating him in front of hospital staff); *cf. McGrath*, 126 Ill. 2d at 91-93 (intentional infliction of emotional distress was sufficiently alleged where the complaint alleged that the defendants, officers and board members of major financial institutions, attempted to defraud the plaintiff, an unsavvy investor, out of millions of dollars of real estate); *Pavilon v. Kaferly*, 204 Ill. App. 3d 235, 245-46 (1990) (there was sufficient evidence to support a finding that the defendant employer intentionally inflicted emotional distress on the plaintiff employee, where he engaged in a cumulative pattern of pressuring his employee for dates, offered to pay for sexual favors, engaged in harassing behaviors after she was fired, and threatened to rape and kill her).

¶ 28       Because plaintiff in this case failed to provide any factual allegations which would allow a finding that defendants' conduct was extreme and outrageous, or that they intended or knew that there was a high probability that their conduct would inflict severe emotional distress, we uphold the trial court's conclusion that he failed to state a cause of action for intentional infliction of emotional distress.

¶ 29       For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 30       Affirmed.