No. 2-23-0239
Opinion filed September 25, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| RICHARD SARMONT, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 22-LA-541 |
| | ) | |
| JOYCE DeWITT and PRAIRIE CIRCLE | ) | |
| UNITARIAN UNIVERSALIST | ) | |
| CONGREGATION, | ) | Honorable |
| | ) | Joseph V. Salvi, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court, with opinion.
Justice Jorgensen concurred in the judgment and opinion.
Presiding Justice McLaren dissented, with opinion.

**OPINION**

¶ 1   Plaintiff, Richard Sarmont, filed a two-count complaint against defendants, Joyce DeWitt and Prairie Circle Unitarian Universalist Congregation (PCUUC), alleging claims of (1) defamation and (2) false-light invasion of privacy (false light). Defendants filed a combined motion to dismiss the complaint under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)). The trial court granted the motion to dismiss, finding that plaintiff failed to adequately plead special damages, which the court concluded was a necessary element for each cause of action. The court denied plaintiffs' motion for leave to file an amended complaint. Plaintiff timely appealed. Plaintiff contends the court erred in determining that (1) "forensic

investigator[ ]" fees, which plaintiff allegedly incurred "to defend himself," are not special damages for purposes of his defamation claim and (2) plaintiff must plead special damages to state a false-light claim. For the reasons stated, we affirm.

¶ 2                                                    I. BACKGROUND

¶ 3      Plaintiff filed his complaint on October 14, 2022. Its general allegations were as follows. Plaintiff was 84 years old and a retired attorney. He became a member of PCUUC in 2012. Plaintiff has held "several important positions" at PCUUC. DeWitt was a PCUUC board of directors member and "was authorized to act on behalf of the Board when dealing with members."

¶ 4      According to the complaint, on October 15, 2021, PCUUC received an e-mail from the address "views.modern@gmail.com" (the e-mail). The e-mail (attached to the complaint as exhibit A) was addressed to eight different e-mail addresses. The e-mail referenced an individual named "Clyde McLemore" and a "Kenosha County Criminal case" that allegedly involved McLemore. According to the e-mail, the complaint in the Kenosha County case alleged that McLemore had "posted images of himself on Facebook that showed him kicking the front door of the Public Safety [b]uilding and bragging that he was trying to break the fingers of an officer who was pulling the door shut." The e-mail continued:

"He is a hoodlum…a thug…a Black Nazi.

PCUUC IS PAYING A $1,000 FEE TO MR. Mc LEMORE for his homily."

The all-capitalized statement was also in bold.

¶ 5      The e-mail further stated:

"Remember the riots in Kenosha last summer. Remember the burning of businesses. Remember BLM demonstrations. This was within a day of the shooting. Bleeding Heart Liberal white people tried (and are still trying) to sacrifice all policemen. Demonstrations

also happened that summer in Zion over the police fatal shooting of a black man. The facts of the Zion situation[ ] was that the parents of the deceased black guy had already lost their case in civil court."

The e-mail went on to reference another event in Kenosha, noting that the police officer who shot "Jacob Blake" was "found innocent by US ATTORNEY, US Investigators, State of Wisconsin, and other enforcement agencies."

¶ 6     According to the complaint, shortly after the e-mail was sent, DeWitt sent an e-mail response "to approximately 32 people who were PCUUC members, including [p]laintiff," containing one sentence (DeWitt's response). DeWitt's response (attached as exhibit B) read: "Stop this, Ric. PCUUC doesn't pay anyone $1000 for a homily." The complaint alleged that plaintiff was known to PCUUC members as " 'Ric.' " DeWitt's response has the same list of recipients as the e-mail.

¶ 7     The complaint alleged that "DeWitt's [response] essentially accused [p]laintiff of anti-black hate speech in a communication to approximately half of [PCUUC's] members." DeWitt's message "was that [p]laintiff was a 'racist' or 'anti-black' member of the community, which 'message' would be offensive to any fair-minded, reasonable person, and particularly to members of the PCUUC." In addition, DeWitt's response "exposed [him] to hatred," "caused him to be shunned by members of [PCUUC]," and was the "basis for a Board decision ex-communicating [him] from *** PCUUC."

¶ 8     The complaint further alleged that plaintiff did not, in fact, send the e-mail and, moreover, defendants have never attempted to determine whether plaintiff sent the e-mail. According to plaintiff, "[d]efendants acted with malice in sending [DeWitt's response] to some 30 members of the [c]ongregation, in that they acted with reckless disregard for the truth of whether [p]laintiff

had, in fact, been the author of the *** email." Also, the complaint alleged that plaintiff "sustained damages in addition to the injury to his reputation and the shunning of [p]laintiff by the PCUUC [c]ommunity, because [p]laintiff ha[d] spent considerable sums employing forensic investigators to determine who in fact sent the subject email to defend himself."

¶ 9    Plaintiff's defamation claim (count I) alleged that DeWitt's response was "published to approximately 30" individuals besides plaintiff and "falsely accuse[d] [p]laintiff of sending a 'racist' email." Count I alleged that, as a result of the e-mail, plaintiff sustained the damages described in the complaint's general allegations, *i.e.*, excommunication from PCUCC, injury to his reputation, shunning by the PCUUC community, and "considerable sums [spent] employing forensic investigators" to find who sent the e-mail.

¶ 10    Plaintiff's false-light claim (count II) alleged that, by sending DeWitt's response to "30 of [plaintiff's] fellow congregants," defendants "placed [plaintiff] in a false light before the public," because the implication that plaintiff is " 'anti-black' or otherwise racist, would be highly offensive to a reasonable person." According to the complaint, DeWitt acted with reckless disregard as to whether her accusation was true, because she sent her response before investigating if it was plaintiff who sent the e-mail.

¶ 11    On January 12, 2023, defendants sought dismissal of the complaint under section 2-619.1 of the Code (*id.*), which permits a party to file a combined motion seeking dismissal under both section 2-615 (*id.* § 2-615) and section 2-619 (*id.* § 2-619) of the Code.

¶ 12    In seeking dismissal under section 2-615 of the Code for failing to state a claim, defendants argued that plaintiff failed to sufficiently allege special damages, which, according to defendants, was required to state a claim of either (1) defamation *per quod* or (2) false light based on statements that were defamatory *per quod*. Defendants argued further that plaintiff's false-light

claim failed to allege facts showing that (1) DeWitt's response was highly offensive to a reasonable person and (2) defendants acted with reckless disregard for the truth or falsity of DeWitt's response.

¶ 13    In seeking dismissal under section 2-619(a)(9) of the Code (*id.* § 2-619(a)(9))—which allows for dismissal when the claim is barred by affirmative matter avoiding the legal effect of or defeating the claim—defendants argued that the ecclesiastical abstention doctrine barred the complaint. See *Bruss v. Przybylo*, 385 Ill. App. 3d 399, 421-22 (2008) (abstention is required if the subject of the dispute involves matters of discipline, faith, internal organization, or ecclesiastical rule or law).

¶ 14    Further, as with their motion under section 2-615, defendants argued that plaintiff's false-light claim should be dismissed because plaintiff could not establish that defendants acted with reckless disregard for the truth or falsity of DeWitt's implication that plaintiff sent the e-mail. In support, defendants relied on extrinsic evidence, *i.e.*, DeWitt's affidavit (attached to defendants' motion), in which she averred that she did not doubt that plaintiff sent the e-mail, given plaintiff's prior conduct and the fact that his Zoom username matched the e-mail address from which the e-mail was sent.

¶ 15    Following a hearing on April 6, 2023, the trial court granted defendants' motion to dismiss as to count I but denied it as to count II. The court first addressed defendants' motion to dismiss plaintiff's defamation *per quod* claim (count I) under section 2-615 of the Code.[1] As to defendants' argument on special damages, the court noted that it was "well-established that general

---

[1]There was no dispute that plaintiff was alleging defamation *per quod*, which, in contrast to defamation *per se*, requires an allegation of special damages.

allegations, such as, damages of the plaintiff's reputation, health, economic loss, and emotional distress are insufficient" to plead special damages. Plaintiff's counsel agreed as to the pleading requirement for special damages but argued that plaintiff met that threshold because he alleged damages that were "incident to the main cause of action, meaning [they were] the natural outgrowth of what happened." The following colloquy occurred:

"MR. GROSSMAN [(PLAINTIFF'S ATTORNEY)]: In our case what we tried to do was say, well, wait a second, you know, we have to show that we are not the ones that made this statement so we hired special—

THE COURT: Why do you have to show that—

MR. GROSSMAN: Because—

THE COURT:—until litigation?

MR. GROSSMAN: Well, in order—

THE COURT: I mean, why did he have to go through that expense?

MR. GROSSMAN: Well, frankly, [Y]our Honor, I said to him, you know, I would like to know that, in fact, there's some evidence that you did not send this e-mail, and so it was inevitable that we would have to show—and in order to sustain a claim here, the basis of which is we didn't do this, that we had to find out who, in fact, did it, right? And there is no—

THE COURT: I don't believe that—the Court does not believe that's a natural outgrowth, whatever term we want to use, of that statement ***."

The court stated further:

"*** [F]or him to go on his own investigation to try to find out who, in fact, sent some kind of e-mails that he feels—or he's alleging were attributable to him by this

statement is not—does not qualify for special damages under the case law, but if, in fact, he's able—like the case law says over and over again that if they allege that they lose business or lose customers, that tied into all the other things you do allege does qualify as special damages and as a specific allegation that qualifies for special damages. I don't see that, though, Counsel."

Accordingly, the court granted defendants' motion to dismiss plaintiff's defamation *per quod* claim, based on plaintiff's failure to plead special damages.

¶ 16    The trial court next addressed defendants' motion to dismiss plaintiff's false-light claim (count II) under section 2-615 of the Code. The court rejected defendants' argument that the e-mail was not "highly offensive to a reasonable person." On whether plaintiff sufficiently alleged "actual malice," the court found that, for purposes of a section 2-615 motion, it could not consider DeWitt's affidavit.[2] Accordingly, it denied defendants' section 2-615 motion as to plaintiff's false-light claim.

¶ 17    The trial court next addressed defendants' argument under section 2-619(a)(9) of the Code that the ecclesiastical abstention doctrine barred the complaint. The court found that the doctrine did not apply, because the matter did not involve the disciplinary process of PCUUC.

¶ 18    On May 5, 2023, defendants filed a motion to reconsider the denial of their motion to dismiss count II. Defendants argued that the requirement to plead special damages in a defamation

---

[2]The court noted that, if it were to consider the issue of "actual malice" *under section 2-619*, the court could "look at [DeWitt's] affidavit, but it's sort of premature because it's contradicting the allegations that [DeWitt] did it in such a way that was to let everybody know in the church that he was attributed to this e-mail."

*per quod* action applies equally to a false-light claim that is based on a defamatory *per quod* statement. Thus, defendants argued that the court should have also dismissed count II for failure to plead special damages.

¶ 19    Plaintiff did not respond to defendants' motion for reconsideration. Instead, plaintiff filed a motion for leave to file an amended complaint. The proposed amended complaint included an allegation that,

> "in an attempt to clear his name in the eyes of the PCUUC Community, [p]laintiff did undertake an investigation to determine who had sent the offending email. Specifically, [p]laintiff spent $4,040.00 to hire a company named 'CyberSecOP' and sought the real name of the person or persons who had in fact sent the racist email."

¶ 20    On June 22, 2023, the trial court entered an order granting defendants' motion for reconsideration and dismissing count II with prejudice.[3]  In addition, the court denied plaintiff's motion for leave to file an amended complaint. The order read:

> "Specifically, the court finds that the forensic investigation expenses alleged in the proposed [a]mended [c]omplaint are in the nature of litigation expenses and therefore do not constitute special damages, regardless of the fact that [p]laintiff identified a specific amount."

¶ 21    Plaintiff timely appealed.

¶ 22                                    II. ANALYSIS

---

[3]Although the case information sheet reflects that a hearing took place, the record does not contain a transcript from that hearing or an acceptable substitute, such as a bystander's report or agreed statement of facts. See Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017).

¶ 23    Plaintiff contends that the trial court erred in dismissing his complaint with prejudice under section 2-615 of the Code (735 ILCS 5/2-615 (West 2022)). Specifically, plaintiff argues that the court erred in determining that (1) plaintiff's forensic investigation expenses are not special damages for purposes of his defamation *per quod* claim and (2) plaintiff must plead special damages to state a false-light claim. In response, defendants contend that the court correctly dismissed both claims, based on plaintiff's failure to plead special damages. Defendants also present additional grounds for affirming the dismissal.

¶ 24    As noted, section 2-619.1 of the Code (*id.* § 2-619.1) permits a party to file a combined motion seeking dismissal under both sections 2-615 (*id.* § 2-615) and 2-619 (*id.* § 2-619) of the Code. A motion under section 2-615 challenges the legal sufficiency of a complaint based on certain defects and defenses apparent on its face. *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 39.

> "In ruling on a section 2-615 motion, a court must accept as true all well-pleaded facts and all reasonable inferences therefrom, to determine whether the complaint's allegations— construed in the light most favorable to the plaintiff—are sufficient to establish a cause of action upon which relief may be granted." *Id.*

The court may not rely on extrinsic material when ruling on a section 2-615 motion. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 91 (1996). A motion under section 2-619(a)(9) admits the legal sufficiency of the cause of action but argues that it is " 'barred by other affirmative matter avoiding the legal effect of or defeating the claim.' " *Walworth Investments-LG, LLC*, 2022 IL 127177, ¶ 40 (quoting 735 ILCS 5/2-619(a)(9) (West 2018)). We review *de novo* a dismissal under either section. *Id.*

¶ 25         A. Whether Count I States a Claim of Defamation *Per Quod*

¶ 26    To state a defamation claim, a plaintiff must plead "facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). "A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with [him or] her." *Bryson*, 174 Ill. 2d at 87.

¶ 27    Defamatory statements are actionable either *per se* or *per quod*. See *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 43. "A statement is defamatory *per se* if its harm is obvious and apparent on its face." *Id.* Illinois recognizes five categories of statements that are defamatory *per se*. See *Tuite v. Corbitt*, 224 Ill. 2d 490, 501-02 (2006). A statement is defamatory *per quod* if (1) "the defamatory character of the statement is not apparent on its face, and extrinsic facts are required to explain its defamatory meaning" (*Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10 (1992)), or (2) "[the] statement is defamatory on its face, but does not fall within one of the limited categories of statements that are actionable *per se*" (*Bryson*, 174 Ill. 2d at 103).

¶ 28    A plaintiff alleging defamation *per se* need not plead special damages. *Id.* at 88. This is because the "actionable *per se* categories are thought to be so obviously and materially harmful to the plaintiff that injury to [the plaintiff's] reputation may be presumed." *Id.* at 87. However, in an action for defamation *per quod*, damage to the plaintiff's reputation is not presumed. *Tuite*, 224 Ill. 2d at 501. Rather, a plaintiff must plead special damages. *Bryson*, 174 Ill. 2d at 87-88. Here, the parties do not dispute that count I alleges defamation *per quod* rather than defamation *per se*. The issue is whether plaintiff adequately pleaded special damages.

¶ 29    "Special damages" have been defined by our supreme court as "actual damage of a pecuniary nature." *Id.*

"There is no precise definition for what will constitute special damages to sustain a cause of action of defamation *per quod*, but it is well established that general allegations, such as damage to the plaintiff's reputation, health, economic loss and emotional distress, are insufficient to sustain such a cause of action." *Tunca v. Painter*, 2012 IL App (1st) 093384, ¶ 60.

¶ 30    For instance, in *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 416-17 (1996), the supreme court found that the plaintiff did not properly plead special damages through her "[v]ague" allegations that she " 'ha[d] been damaged monetarily by losing gainful employment and wages' and that she 'ha[d] suffered great mental pain and anguish and incurred great expense for the treatment thereof.' " Similarly, in *Benton*, 2020 IL App (1st) 190549, ¶ 59, the appellate court found fatally "[v]ague" the plaintiffs' allegations that the statements "irreparably 'tarnished' [the plaintiffs'] reputations and caused emotional and economic damage and that the damage was 'quantifiable' through 'lost economic opportunities, family dissension, and lost jobs.' " Plaintiff's allegation here—that he "spent considerable sums employing forensic investigators to determine who in fact sent the subject email to defend himself"—was similarly too vague to plead special damages.

¶ 31    In his brief, plaintiff concedes that "the cases appear to require a specific identification of specific amounts of money 'lost' by [the] plaintiff that are logically (not speculatively) related to the defamatory statement." Pointing to his proposed amended complaint, he asserts that he "spent over $4,000.00 to hire computer specialists in an effort to find out who, in fact, send [*sic*] the offending 'racist' email." He argues that "[t]here is nothing general, vague[,] or speculative about [his] allegation of special damages."

¶ 32   However, this "specific identification of specific amounts of money 'lost' by plaintiff" was not included in his initial complaint. As noted, plaintiff sought leave to amend his complaint to include this new allegation, but the trial court denied plaintiff leave to amend. Plaintiff makes no argument on appeal that the court abused its discretion in denying him leave to amend. See *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992) (stating the relevant factors the reviewing court should consider when determining whether the trial court abused its discretion in denying a plaintiff leave to amend the complaint). Thus, we would be justified in finding that plaintiff has forfeited any argument that including a "specific" dollar amount cured the defective pleading. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("[a]rgument" in the appellant's opening brief shall include citation to pertinent authority, and any point not made in the opening brief is forfeited); *In re Marriage of Lindell*, 2023 IL App (2d) 220055, ¶ 22. Given this forfeiture, the court's ruling undoubtedly stands.

¶ 33   Forfeiture aside, even if plaintiff alleged a specific dollar amount, the allegation would still be insufficient for pleading special damages. We agree with defendants that the trial court correctly determined that the forensic investigation expenses were in the nature of litigation expenses and, thus, did not qualify as special damages.

¶ 34   First, the money plaintiff spent "in an attempt to clear his name in the eyes of the PCUUC Community" is not analogous to the type of special damages found sufficient in other cases. For example, in *Tunca*, 2012 IL App (1st) 093384, ¶ 62, the court held that the plaintiff surgeon's allegation that accusations of medical malpractice caused an $861,506 decrease in his income and a 25% drop in his referrals was sufficient to support a claim of defamation *per quod*. In *Becker v. Zellner*, 292 Ill. App. 3d 116, 127 (1997), the court found sufficient the plaintiffs' allegation that a third party stopped doing business with them because of the defendants' defamatory statements.

In *Halpern v. News-Sun Broadcasting Co.*, 53 Ill. App. 3d 644, 653 (1977), we found sufficient the plaintiff's allegation that "it ha[d] lost income and continue[d] to lose income as a result of patients leaving the [nursing] home and other patients removing their applications." Here, plaintiff spent money because he wanted to clear his reputation. This is not the type of pecuniary loss found sufficient in other cases. Nor did plaintiff allege that he desired to clear his reputation because he had suffered a recognized type of pecuniary loss.

¶ 35    Further, defendants direct us to *Carson v. Palombo*, 18 N.E.3d 1036 (Ind. Ct. App. 2014). There, the reviewing court held that the investigator fees paid by the plaintiff were not special damages resulting from an alleged defamation *per quod*. *Id.* at 1047. Rather, they were a litigation expense akin to attorney fees and thus, under "the American Rule," "are not considered to be 'damages' in the absence of statutory authority, an agreement between the parties, or an equitable exception." *Id.* Defendants argue that we should find *Carson* persuasive because Illinois courts follow the American Rule. See *Village of Glenview v. Zwick*, 356 Ill. App. 3d 630, 636 (2005) (noting that, with few exceptions, the American Rule remains the general rule in Illinois). Plaintiff responds that *Carson* is distinguishable because the fees there were incurred *after* litigation began.

¶ 36    To be sure, nothing on the face of plaintiff's complaint indicates that plaintiff incurred the forensic investigation expenses for purposes of litigation. While plaintiff now attempts to distinguish *Carson*, we note that, at the hearing on the motion to dismiss, plaintiff's counsel indicated that the investigation expenses were incurred *after* litigation had begun. Of course, counsel's arguments below were extrinsic evidence, which we cannot consider in reviewing the propriety of a dismissal under section 2-615. See *Bryson*, 174 Ill. 2d at 91-92. In any event, even if plaintiff incurred the expenses *before* filing suit, we agree with defendants that the expenses are analogous to litigation expenses and so not recoverable as special damages. As defendants note,

proving the alleged defamatory statement was false is an essential element of plaintiff's defamation claim. As such, the expenses incurred to "clear his name," *i.e.*, to prove that DeWitt's assertion that plaintiff sent the e-mail is false, are directly related to the elements plaintiff would need to prove at trial and, thus, are necessary expenses of litigation.

¶ 37    Accordingly, based on the foregoing, we conclude that the trial court properly dismissed count I of plaintiff's complaint for failing to allege special damages.

¶ 38                    B. Whether Count II States a False-Light Claim

¶ 39    Plaintiff next contends that the trial court erred in dismissing his false-light claim for failing to allege special damages. According to plaintiff, our supreme court has never held that a false-light claim requires pleading special damages.

¶ 40    In response, defendants assert that, although this is a case of first impression in our district, the First District has held in a series of cases that, where the false-light claim is based on a statement that was defamatory *per quod*, the plaintiff must plead special damages. See *Benton*, 2020 IL App (1st) 190549, ¶ 83; *Chang Hyun Moon v. Kang Jun Liu*, 2015 IL App (1st) 143606, ¶ 17; *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 736 (1990). Defendant argues that we should adopt the reasoning in those cases.

¶ 41    Before addressing those cases, we discuss *Lovgren v. Citizens First National Bank of Princeton*, 126 Ill. 2d 411, 418 (1989), where our supreme court adopted the "privacy tort of placing another in a false light," set forth as follows in section 652E of the Restatement (Second) of Torts (1977):

> " 'One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.' " *Id.* (quoting Restatement (Second) of Torts § 652E (1977)).

¶ 42    In *Lovgren*, the plaintiff bank customer filed a three-count complaint against a bank and other defendants, alleging "invasion of privacy based upon the unreasonable intrusion upon the seclusion of another" (intrusion upon seclusion). *Id.* at 414-15. The plaintiff alleged that, after he failed to meet his financial obligations on a mortgage that the bank held on his farm, the bank urged the plaintiff to sell his farm. *Id.* The plaintiff refused and asked for additional time to meet his financial obligations. *Id.* at 415. Thereafter, the defendants placed advertisements in local newspapers and circulated handbills falsely stating that the plaintiff was selling his farm at a public auction. *Id.* The plaintiff alleged that the unauthorized advertisements caused him anguish and suffering and made it impossible for him to obtain refinancing of his mortgage loan. *Id.* The plaintiff sought compensatory and punitive damages and costs. *Id.* The trial court dismissed the complaint for failure to state a cause of action. *Id.* The appellate court reversed, holding that the complaint stated a cause of action for intrusion upon seclusion. *Id.* at 414.

¶ 43    The supreme court vacated the appellate court's decision, reversed the trial court's dismissal, and remanded the case. *Id.* at 423. Although the supreme court agreed with the defendants that the plaintiff failed to state a claim of intrusion upon seclusion, the court determined that the plaintiff instead alleged a false-light claim as set forth in section 652E of the Restatement (Restatement (Second) of Torts § 652E (1977)), quoted above. *Lovgren*, 126 Ill. 2d at 418. The court found that, because the advertisements were untrue and sufficiently public, the defendants'

actions placed the plaintiff in a false light before the public. *Id.* at 419. Further, the court determined that a finder of fact could find that the defendants knew that the publication of the false fact would be highly offensive. *Id.* at 420. "Of considerable significance" for the court was "the allegation that the unauthorized advertisement made it practically impossible for [the] plaintiff to obtain refinancing of his mortgage loan." *Id.* Finally, the court determined that, even though the case did not involve a public figure or a matter of public interest, the plaintiff still had to—and did—plead that the defendants acted with "actual malice." *Id.* at 420-23. However, the court was not concerned with whether any other "typical defamation restrictions and requirements appl[ied]." *Id.* at 421.

¶ 44    To be sure, *Lovgren* made no express comment on whether a plaintiff pleading a false-light claim must plead special damages. However, the facts in *Lovgren* certainly suggest that the plaintiff did plead special damages, given the court's emphasis on the plaintiff's allegation that, because of the false publication, the plaintiff could not secure refinancing of his mortgage loan. See *id.* at 420. The court also noted that the plaintiff sought "compensatory and punitive damages." *Id.* at 415, 423. The plaintiff's compensatory damages could have reasonably encompassed special damages, based on the plaintiff's alleged inability to secure refinancing. See 2 Rodney A. Smolla, Law of Defamation § 9:11 (2024 Update) ("In the law of defamation, compensatory damages is not a specific category or term of art as such. The word 'compensatory' in a nontechnical descriptive sense merely refers to all damages designed to compensate for injury, rather than those damages that are 'punitive,' i.e., designed to punish the defendant."); 33A Ill. L. and Prac. *Slander and Libel* § 87 (2024 Update) ("In actions for defamation and related dignitary torts, two categories of compensatory damages are recoverable: general damages and special damages.").

¶ 45    At the very least, nothing in *Lovgren* precludes a requirement that special damages be pled when a plaintiff brings a false-light claim based on a defamatory *per quod* statement. Indeed, as defendant notes, the First District has imposed such a requirement in at least three post-*Lovgren* decisions. We now turn to those decisions.

¶ 46    In *Schaffer*, the earliest of the decisions, the plaintiff brought a two-count complaint alleging claims of defamation and false light based on statements made in a 1985 editorial broadcast. *Schaffer*, 196 Ill. App. 3d at 729. In the plaintiff's appeal from the dismissal of the complaint, the First District first determined that the plaintiff had brought a claim of defamation *per quod*¸ rather than defamation *per se*, because the defamatory nature of the statements could not be ascertained without looking outside the editorial to a series of reports that had been televised several months earlier. *Id.* at 731-33. Thereafter, the court concluded that, because the plaintiff failed to plead special damages, the trial court properly dismissed the defamation *per quod* claim. *Id.* at 733.

¶ 47    The court next considered whether the plaintiff stated a false-light claim, where the claim stemmed from the same statements supporting the plaintiff's claim of defamation *per quod*. *Id.* at 733-34.

¶ 48    The court began the discussion by presenting the elements of a false-light claim as stated in *Lovgren*. *Id.* at 734. It noted that a false-light claim, "although closely related to defamation, protects one's interest in being let alone from offensive publicity." *Id.* The court further noted that, while "all defamation actions can be analyzed as false-light claims, *** not all false-light claims support defamation actions," because a plaintiff need not be defamed to state a false-light claim. *Id.* The court went on to explain that, "[d]ue to the similarities between these torts, certain

restrictions and limitations on actions for defamation may be equally pertinent to claims for [false light]." *Id.*

¶ 49    The court next acknowledged that there was limited authority on the applicability of a special damages requirement to false-light claims. *Id.* at 735. The court quoted the text of section 652E of the Restatement (Restatement (Second) of Torts § 652E (1977)), which, as we have noted, was adopted by our supreme court in *Lovgren*. *Schaffer*, 196 Ill. App. 3d at 734; see *Myers v. Levy*, 348 Ill. App. 3d 906, 915 (2004). The court also referenced comment e to section 652E, which addresses the question "of the extent to which common law and statutory restrictions and limitations that have grown up around the action for defamation are equally applicable when the action is one for invasion of privacy by publicity given to falsehoods concerning the plaintiff." Restatement (Second) of Torts § 652E cmt. e, at 399 (1977); *Schaffer*, 196 Ill. App. 3d at 735. These restrictions include "the requirement that special damages be pleaded and proved by the plaintiff in any case in which the defamatory words are not actionable per se." Restatement (Second) of Torts § 652E cmt. e, at 399 (1977). The comments further state:

> "When the false publicity is also defamatory so that either action can be maintained by the plaintiff, it is arguable that limitations of long standing that have been found desirable for the action for defamation should not be successfully evaded by proceeding upon a different theory of later origin, in the development of which the attention of the courts has not been directed to the limitations." *Id.*

¶ 50    The *Schaffer* court next turned to *Fellows v. National Enquirer, Inc.*, 721 P.2d 97 (Cal. 1986). In *Fellows*, the subject of a newspaper article brought claims of, among other things, false light. *Id.* at 98. Under a California statute, a plaintiff bringing a cause of action for "libel" based on "[d]efamatory language not libelous on its face" was required to allege "special damage[s]"

(Internal quotation marks omitted.) *Id.* at 97 n.1. The issue in *Fellows* was whether the special damages rule applied to a false-light claim similarly based on language that was defamatory only by reference to extrinsic facts. *Id.* at 97. The court held that it did. *Id.* The court noted that the California statute "manifest[ed] a legislative determination that liability imposed for a publication which affords no warning of its defamatory nature, and has not caused actual pecuniary injury, would place too great a burden on the editorial process and would hamper the free dissemination of the news." *Id.* at 107-08. The court recognized that false-light actions threaten the freedoms of speech and press in the same manner as defamation actions. *Id.* at 101. Hence, the court determined that the public policy embodied in the statute applied equally to false-light actions:

> "Since virtually every published defamation would support an action for [false light], exempting such actions from the requirement of proving special damages would render the statute a nullity. Permitting a plaintiff to circumvent the statutory requirement by labeling the action as one for [false light] would defeat the legislative purpose of providing a zone of protection for the operation of a free press." *Id.* at 108.

The court thus held that, "whenever a claim for [false light] is based on language that is defamatory within the meaning of [the California statute], pleading and proof of special damages are required." *Id.* at 109.

¶ 51    The *Schaffer* court found *Fellows*'s reasoning persuasive. *Schaffer*, 196 Ill. App. 3d at 735. The court also emphasized that, in addition to protecting first amendment rights, one of the purposes behind the special damages requirement in a claim of defamation *per quod* was "to discourage trivial and extortionate claims." *Id.* at 736. Thus, the court concluded "that a claim for [false light] based on language, the defamatory meaning of which can be established only by reference to extrinsic facts, requires the pleading of special damages with particularity." *Id.*

¶ 52    The First District followed *Schaffer* in at least two subsequent decisions, both of which included nonmedia defendants. In *Chang Hyun Moon*, 2015 IL App (1st) 143606, ¶¶ 1, 2, the plaintiff filed a complaint alleging, *inter alia*, claims of defamation *per quod* and false light, based on statements that the defendants, members of the Lakeview Korean Presbyterian Church, made about the plaintiff and published to third parties within and outside the church. The trial court dismissed both claims under section 2-615 of the Code. *Id.* ¶ 1. On appeal, the reviewing court first found that the plaintiff failed to plead special damages and thus did not state a claim of defamation *per quod*. *Id.* ¶ 16. Thereafter, citing *Schaffer*, the court determined that, because it "held that [the] plaintiff's purported special damages were insufficient to support his defamation *per quod* count," those damages would "likewise *** not support a claim for false light." *Id.* ¶ 18. Accordingly, the court affirmed the dismissal of the false-light claims. *Id.* ¶ 22.

¶ 53    In *Benton*, parents of athletes sued both media and nonmedia defendants for various claims, including false light and defamation related to purported little league baseball improprieties. *Benton*, 2020 IL App (1st) 190549. The court cited *Schaffer* and *Chang Hyun Moon* in finding that the plaintiffs' false-light claims, based on the same statements as their defamation *per quod* counts, were properly dismissed for, among other reasons, failure to allege special damages. *Benton*, 2020 IL App (1st) 190549, ¶¶ 88-89 (citing *Chang Hyun Moon*, 2015 IL App (1st) 143606, ¶ 17, and *Schaffer*, 196 Ill. App. 3d at 736).

¶ 54    We, too, agree with the reasoning in *Schaffer*. We acknowledge that *Schaffer* involved a media defendant and thus the freedom of the press was a concern in that case not present here. Yet other policy reasons justify importing the restrictions on defamation actions into the law of false light. See *Schaffer*, 196 Ill. App. 3d at 734 ("Due to the similarities between these torts, certain

restrictions and limitations on actions for defamation may be equally pertinent to claims for false-light invasion of privacy.").

¶ 55     The law of defamation has "developed over a period of many centuries," while the law of privacy is "of quite recent development." John W. Wade, *Defamation and the Right of Privacy*, 15 Vand. L. Rev. 1093, 1093 (1962) (attributing the birth of privacy torts to "the remarkable law review article" of Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890)). As noted above, "all defamation cases can be analyzed as false-light cases, but not all false-light cases are defamation cases." *Lovgren*, 126 Ill. 2d at 421 (because the plaintiff in *Lovgren* brought actions for only privacy torts and not defamation, the court explained: "We need not be concerned here with whether typical defamation restrictions and requirements apply.").

¶ 56     As the court did in *Schaffer*, judges and scholars have long discussed the concern that if limitations that restrict defamation claims can be avoided by pleading a false-light count based upon the same facts, then the newer tort will supplant defamation. See *Schaffer*, 196 Ill. App. 3d at 736; *Fellows*, 721 P.2d at 108-09; Restatement (Second) of Torts § 652E cmt. e, at 399 (1977); William L. Prosser, *Privacy*, 48 Calif. L. Rev. 383, 401 (1960). Prosser decried: "[W]hat of the numerous restrictions *** which have hedged defamation about for many years, in the interest of freedom of the press and the discouragement of trivial and extortionate claims? Are they of so little consequence that they may be circumvented in so casual and cavalier a fashion?" Prosser, *supra* at 401. *Fellows*, 721 P.2d at 104 (collecting cases), observed that "[t]he overwhelming majority of decisions in other jurisdictions enforce defamation restrictions in actions for false light invasion of privacy when such actions are based on a defamatory publication."

¶ 57     Plaintiff disparages special damages, even in defamation, and points to *Agriss v. Roadway Express, Inc.*, 483 A.2d 456 (Pa. Super. Ct. 1984), an intermediate appellate court decision in

Pennsylvania that held that special damages were no longer required in *per quod* defamation actions. But our courts have rejected attempts to undermine some of the limitations on defamation. For example, the supreme court refused a request to abandon the innocent construction rule in defamation *per se* cases, alluding to the advancement of "free speech and free press and *** the robust discussion of daily affairs." *Tuite*, 224 Ill. 2d at 511. And Illinois's innocent construction rule was applied to affirm the dismissal of both a defamation *per se* cause and a related false-light count in *Harte v. Chicago Council of Lawyers*, 220 Ill. App. 3d 255, 263 (1991). Further, our supreme court recently cited the special damages rule in *Project44, Inc. v. FourKites, Inc.*, 2024 IL 129227, ¶ 27 (defamation *per se* action, yet citing *Tuite*, 224 Ill. 2d at 501 ("In a defamation *per quod* action," "the plaintiff must plead and prove special damages to recover.")). Plaintiff also argues that "the vanguard of sister state" decisions do not require proof of special damages in false-light actions, but what he cites in support are mostly trial court opinions.

¶ 58    It has been said that " '[w]hatever is added to the field of libel is taken from the field of free debate.' While less compelling, these same considerations are also at play in private, non-political expression. Thus, the defamation action has been narrowly tailored to limit free speech as little as possible." *Cain v. Hearst Corp.*, 878 S.W.2d 577, 582 (Tex. 1994) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 272 (1964)); *Sweeney v. Patterson*, 128 F.2d 457, 458 (D.C. Cir. 1942).

¶ 59    In this electronic age, we find those concerns still valid. Plaintiff should not be permitted to evade the well-established special damages rule simply by relabeling his defamation *per quod* claim as a false-light claim. Allowing him to do so would undermine the important policies behind the special damages requirement: protecting first amendment rights and discouraging trivial and extortionate claims.

¶ 60    Accordingly, we hold that plaintiff was required to plead special damages to state his false-light claim, where the claim was based on a defamatory *per quod* statement. Because plaintiff failed to do so, the trial court properly dismissed count II of the complaint.

¶ 61    Given our conclusion that both counts were properly dismissed for failing to allege special damages, we need not consider defendants' alternative arguments for affirming the dismissal.

¶ 62                                III. CONCLUSION

¶ 63    Accordingly, based on the foregoing, we affirm the order of the circuit court of Lake County dismissing plaintiff's complaint with prejudice.

¶ 64    Affirmed.

¶ 65    PRESIDING JUSTICE McLAREN, dissenting:

¶ 66    The trial court dismissed the cause on the bases that (1) the forensic investigation expenses that plaintiff alleged in his defamation claim were in the nature of litigation expenses and, therefore, did not constitute special damages, and (2) plaintiff failed to plead special damages in the count alleging false light. Essentially, the trial court erroneously invaded the province of the jury, substituting its evaluation of the evidence for that of the jury regarding what constituted special damages. Plaintiff claimed that the requirement of pecuniary damages is fulfilled by the cost of remediation, in the form of forensic investigation expenses, to prove that he did not send the e-mail. The majority affirms the trial court's error, failing to recognize that the ultimate issue of fact is to be determined by the jury, not the judge. This is especially true for purposes of a section 2-615 motion to dismiss, wherein the facts alleged in the complaint are taken as true *vis-à-vis* allegations in the motion to dismiss.

¶ 67    There is no specific precedent on point. The trial court's substantial error of imposing its judgment on material issues of fact, in violation of the irrebuttable presumption of the verity of

allegations contained in the complaint, is approved and extended by the majority in the absence of established precedent; the most that the majority can say is that "[t]his is not the type of pecuniary loss found sufficient in other cases." *Supra* ¶ 34. There may be other means to resolve this error, but that is presently counterfactual.

¶ 68    I submit that the jury should determine whether the cost of establishing that the plaintiff has been injured by the acts of the defendants is a cost of remediation, a cost of litigation, or a combination thereof. Thereafter, an appeal may be appropriate to determine if the verdict was against the manifest weight of the evidence.

¶ 69    The trial court's judgment and the majority disposition assume a premise that is unstated in their analyses: that damages must be singular in nature—an either-or proposition. However, neither the trial court nor the majority acknowledges that, if the defendants had admitted error, litigation may have never ensued. Attempting to mend a broken arm by casting it is not a cost of litigation, it is a cost of remediation. Likewise, remediating a false-light statement may be something other than a cost of litigation.

¶ 70    I also submit that the majority's determination that any attempt to remediate an injury caused by defamation or false light by establishing the falsity of the statement and/or the defendant's reckless disregard or intent to harm the plaintiff is emasculating the concept providing a remedy for the right not to be defamed. The majority has erroneously prejudged an ultimate issue of fact and has determined that one has no recourse if one incurs money damages in remediating the wrong inflicted. Ironically, I submit the majority has not cited any authority that has characterized the cost of proving one's innocence as a cost of litigation that ultimately precludes recovery for remediating the wrong through such litigation.

¶ 71    I close with this hypothetical scenario: assume that plaintiff had pleaded classic special damages in addition to these alleged damages. The majority has determined that there would be no recovery for the cost of remediation, as this type of expense *must* be a cost of litigation. I submit that such a determination is both premature and counterintuitive.

*Sarmont v. DeWitt*, 2024 IL App (2d) 230239

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 22-LA-541; the Hon. Joseph V. Salvi, Judge, presiding. |
| **Attorneys for Appellant:** | Richard D. Grossman, of Chicago, for appellant. |
| **Attorneys for Appellee:** | William B. Weiler and Samantha A. Guttenberg, of Langhenry, Gillen, Lundquist & Johnson, LLC, of Chicago, for appellees. |